UNITED STATES of America, Appellee,

v.

**Louis C. OSTRER, Defendant-Appellant.**

**No. 486, Docket 78–1318.**

United States Court of Appeals, Second Circuit.

Argued Jan. 16, 1979.

Decided April 23, 1979.

---

Alan M. Dershowitz, Cambridge, Mass. (Silverglate, Shapiro & Gertner, Boston, Mass., Harvey A. Silverglate and Ann Lambert Greenblatt, Boston, Mass., of counsel), for defendant-appellant.

Richard F. Ziegler, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty. S. D. N. Y., Alan R. Naftalis and Howard W. Goldstein, Asst. U. S. Attys., New York City, of counsel), for appellee.

Before WATERMAN, GURFEIN and VAN GRAAFEILAND, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

This is an appeal from an order of the United States District Court for the Southern District of New York disqualifyiı ϩ Michael B. Pollack, Esq., from representing appellant in a pending criminal prosecution. The ground for disqualification was that, while employed as a Government attorney,

Pollack had participated in criminal investigations so related to the present action [1] that he now is in a position to use information obtained during those investigations to aid his present client. We affirm.

From 1970 to 1975, Pollack was employed by the Department of Justice as a special attorney assigned to the Brooklyn Strike Force. While he was serving as a federal prosecutor, Pollack's official duties brought him into contact with three persons whom the Government intends to call as witnesses at appellant's trial. Pollack personally prosecuted two of those men, Barresi and Geller, and called the third, Brown, as a witness at Geller's trial.

Pollack's prosecution of Barresi arose from Barresi's alleged extortionate activities as an officer of the union local from which appellant is charged with having embezzled $2.3 million. Pollack prosecuted Geller for income tax evasion in connection with an alleged scheme to draw unearned money from a corporation in the form of salaries and deduct the withdrawals from the corporation's income as legitimate business expenses. [2] Geller and Brown owned check-cashing establishments in New York City. Brown had sold an establishment to Geller and frequently stopped by to help him learn the business. Pollack interviewed Brown and called him as a witness at Geller's trial. After the trial, Pollack had discussions with the New York County District Attorney's office concerning its investigation of illegal check-cashing operations, an investigation which extended to the businesses of Geller and Brown. Pollack arranged for federal agents under his supervision to review papers seized from Brown's establishment. They were also given access to evidence seized from Geller's place of business. [3]

The Government intends to call both Geller and Brown to testify concerning transactions they had with appellant in connection with their check-cashing operations. Their testimony will be offered in support of the Government's claim that appellant attempted to avoid paying income taxes by using fictitious entities and false names to conceal his true financial status. The Government contends that Pollack's earlier supervision of the review of the documents seized from the check-cashing establishments of Geller and Brown revealed information to him about the matters concerning which Geller and Brown will be asked to testify. [4] The Government made no showing as to Barresi's anticipated testimony or the relationship between his alleged extortionate activities and the conduct forming the basis of the instant indictment, representing only that "Pollack's involvement as the prosecutor of [Barresi] doubtless provided information to him which perhaps could be of use to him when Barresi appears as a Government witness in the trial of this case."

This Court recently noted that disqualification motions should be granted

---

1. The seven-count indictment in this action charges appellant with conspiracy to evade the income tax laws, income tax evasion, conspiracy to embezzle funds from employee benefit plans, embezzlement, interstate transportation of stolen property, and illegal use of income derived from a pattern of racketeering activity.

2. Neither Barresi nor Geller was convicted.

3. The state's seizure of documents from Geller and Brown was predicated on electronic interceptions made pursuant to a court authorization later determined to be defective. Appellant intends to move to suppress certain evidence in this case on the ground that it has been tainted by the illegality of the state seizures. The Government asserts that it will be necessary to call Pollack to testify at the suppression hearing. Although the Government also advances the possibility that it might call Pollack as a witness at trial, the district court noted that the Government has made "no real representation . . . as to the scope and nature of the testimony Mr. Pollack might be called upon to give at trial," it being "[t]he Government's contention that it is not required at this juncture to give the defendant a preview of all of its evidence."

4. Even if Pollack did not review these papers himself, knowledge of their contents is imputable to him because of his supervisory status. *United States v. Standard Oil Co.,* 136 F.Supp. 345, 362 (S.D.N.Y.1955); ABA Comm. on Professional Ethics, Opinions, No. 342 at 8 & n.25 (1975).

**340**

where the attorney in question is potentially in a position to use privileged information obtained during prior representation of the movant.[5] *Board of Education v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979). Disqualification of counsel in such cases is rooted in notions of fundamental fairness; allowing an attorney to represent a client in a situation where he may use information obtained in the course of former representation of the client's adversary gives the client an "unfair advantage." *Id.* at 875–76; *see Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562, 571 (2d Cir. 1973); Note, *Attorney's Conflict of Interests: Representation of Interest Adverse to That of Former Client*, 55 B.U.L.Rev. 61, 64 (1975) (purpose of Canon 4 is to ensure "fundamental fairness").

■ The applicability of this standard of conduct to former Government attorneys is clear, *see General Motors Corp. v. City of New York*, 501 F.2d 639, 648–49 (2d Cir. 1974); *Empire Linotype School, Inc. v. United States*, 143 F.Supp. 627, 631–33 (S.D.N.Y.1956); *United States v. Standard Oil Co.*, 136 F.Supp. 345 (S.D.N.Y.1955),[6] and is supported by sound policy considerations. Allowing an attorney to represent a client in a matter with which he became uniquely familiar during his public employment may encourage Government attorneys to conduct their offices with an eye toward future private employment. *Handelman v. Weiss*, 368 F.Supp. 258, 264 (S.D.N.Y.1973); ABA Comm. on Professional Ethics, Opinions, No. 342 at 9 (1975); New York State Bar Association Comm. on Professional Ethics, Opinions, No. 506 at 2 (1979). Allowing such representation also unduly favors those litigants whose attorneys were able to gather valuable pertinent information while on the Government payroll. *Allied Realty, Inc. v. Exchange National Bank*, 283 F.Supp. 464, 467 (D.Minn.1968), aff'd, 408 F.2d 1099 (8th Cir.), *cert. denied*, 396 U.S. 823, 90 S.Ct. 64, 24 L.Ed.2d 73 (1969). Finally, as in all Canon 4 cases, the danger exists that the former Government attorney may breach a confidence by divulging or unfairly utilizing information obtained in the course of his former employment. *Emle Industries, Inc. v. Patentex, Inc., supra*, 478 F.2d at 571.

■ These considerations are pertinent not only where the issues involved in the lawyer's former and present representation are the same, but also where, as here, the privileged information obtained in the course of the former representation may be used to impeach or discredit important Government witnesses in a closely related matter. The principle is well established that an attorney should be disqualified from opposing a former client if during his representation of that client he obtained information "relevant to the controversy at hand", *United States v. Standard Oil Co., supra*, 136 F.Supp. at 353, or "*pertaining* to the pending matter", *General Motors Corp. v. City of New York, supra,* 501 F.2d at 651 (emphasis in original). Here, the Government's case rests to a large extent upon the testimony of Geller and Brown, who are expected to testify concerning appellant's improper use of their check-cashing businesses. Pollack's earlier investigation of Brown and prosecution of Geller, and his probe of illegal check-cashing operations, gave him access to facts about their businesses and their backgrounds that make them peculiarly susceptible to his cross-examination in this case. Because much of what a Government attorney learns while investigating a case does not become part of the prosecution's files, the fact that some impeachment material may be available to appellant under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), minimizes but does not eradicate the unfair advantage that appellant secures through Pollack's representation.

---

5. In such cases the attorney's continued participation in the case violates Canon 4 of the Code of Professional Responsibility, which provides:
   A Lawyer Should Preserve the Confidences and Secrets of a Client.

6. *See also* DR 9–101(B), which provides:
   A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee.

A defendant's right to counsel of his choice is not an absolute one, *United States v. Tortora,* 464 F.2d 1202, 1210 (2d Cir.), *cert. denied,* 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972); *United States v. Deegan,* 428 F.2d 714, 716 (2d Cir.), *cert. denied,* 400 U.S. 928, 91 S.Ct. 193, 27 L.Ed.2d 188 (1970), but must give way when required by the fair and proper administration of justice. *United States v. Calabro,* 467 F.2d 973, 986 (2d Cir. 1972), *cert. denied,* 410 U.S. 926, 93 S.Ct. 1357, 35 L.Ed.2d 587 (1973); *United States v. Bentvena,* 319 F.2d 916, 936 (2d Cir.), *cert. denied,* 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963). Because Brown and Geller will testify regarding matters with which Pollack became uniquely familiar while in Government service, we hold that the district court did not abuse its discretion in disqualifying Pollack.

We have considered appellant's claim of laches and find it meritless. The Government advised appellant at the outset that it objected to Pollack's participation in the defense. Appellant's subsequent use of substitute counsel led the Government to believe that the question had been mooted. When Pollack reappeared in appellant's behalf, the Government promptly brought the instant motion to disqualify him. The order appealed from is affirmed.