**UNITED STATES of America**

v.

**Frank JAMES and Wallace Rice, Defendants.**

**No. 82 Cr. 723.**

United States District Court, S.D. New York.

Jan. 19, 1983.

John S. Martin, Jr., U.S. Atty., S.D.N.Y., New York City, for the United States of America; Rhea Neugarten and Philip Le B. Douglas, Asst. U.S. Attys., New York City, of counsel.

Goldberger, Feldman, Dubin & Weisenfeld, P.C. by Paul A. Goldberger, Jerry Feldman, New York City, for defendants James and Rice.

## MEMORANDUM

BONSAL, District Judge.

On October 26, 1982 an indictment was filed charging the defendants Frank James and Wallace Rice with violations of Federal narcotics laws. By superseding indictment filed January 11, 1983, two additional counts were lodged against the defendant Frank James, charging him with possession of approximately 1.12 grams of cocaine and with receiving a firearm which had been shipped and transported in interstate commerce. Both defendants are represented by the firm of Goldberger, Feldman, Dubin & Weisenfeld, P.C.

A pretrial conference was held on December 13, 1982 to consider discovery and other problems. At this conference the government submitted a letter addressed to the court, dated December 10, 1982, designed to bring the court's attention to "serious problems presented by the continued representation of the defendants Frank James and Wallace Rice by the law firm of Goldberger, Feldman, Dubin & Weisenfeld, P.C." (hereinafter, "the Goldberger firm"). The government first contended that it was inappropriate for both defendants to be represented by the Goldberger firm. This claim was the subject of a hearing held on December 13, 1982, in the course of which the court informed the defendants of the risks of being represented by attorneys belonging to the same firm. Various conflicts of interest that might arise were related to the defendants by the court and their right to waive conflict-free representation was explained. At a hearing on December 17 each of the defendants stated to the court that he had carefully considered the matters raised by the court at the December 13 hearing. James then stated that he wished to continue to be represented by Goldberger, and Rice stated that he wished to continue to be represented by Feldman. Defendant Rice stated that he had consulted an independent attorney, who advised him to stay with Feldman.

The second arm of the government's application to disqualify the Goldberger firm involves Leroy "Nicky" Barnes. In a well-publicized trial before Judge Werker in 1977, Barnes was convicted of narcotics violations and sentenced to life imprisonment. Barnes is now cooperating with the government and the charges against James and Rice are based, at least in part, on information furnished by Barnes. At Barnes' trial, he was represented by the firm of Breitbart, Goldberger & Feldman (hereinafter, "the Breitbart firm"). Following the Barnes trial, Breitbart withdrew from the firm and Goldberger and Feldman formed what is now the Goldberger firm. At the Barnes trial, Goldberger (James' attorney in the present case) and Feldman (Rice's attorney) each represented co-defendants of Barnes.

On December 29, 1982, the government filed a formal motion to disqualify the Goldberger firm from further representa-

tion of the defendants. Argument on this motion was heard on January 11, 1983, at which time the Goldberger firm advised the court that each of the defendants intended to assert a defense of entrapment at the trial and, in connection with that defense, intended to call Barnes as a witness. Barnes' attorney, Howard Jacobs,[1] appeared at the argument and referred the court to his letter, dated January 5, 1983, stating that Mr. Barnes desired to join in the government's motion to disqualify the Goldberger firm from further representation of the defendants, "based upon the prior attorney-client relationship between Mr. Barnes and Goldberger, Breitbart & Feldman."

In its motion, the government presented the following factual material regarding the Goldberger firm and its members. For the most part, the facts have been conceded by the Goldberger firm. The affidavits submitted by the government catalogue a long list of cases involving Barnes, James, Rice and others in which Goldberger and/or Feldman provided legal representation to one or more defendants. The government alleges that Goldberger and Feldman often participated in trials at which Barnes was a defendant, either representing a co-defendant—as at Barnes' 1977 federal narcotics trial—or substituting for their partner Breitbart at pretrial proceedings. As a result, the government contends, both Goldberger and Feldman were privy to confidential information regarding Barnes on a number of occasions.

The government's affidavits allege that, at the federal trial involving Barnes and 10 co-defendants, there was a coordinated defense strategy and that Breitbart, Goldberger, and Feldman conferred regularly during the trial. Villano Affidavit at paragraph 4 and Romano Affidavit at paragraph 5. In connection with a narcotics case in New York County, the Breitbart firm represented Rice and three co-defendants and each partner spoke on behalf of all four defendants at one time or another; Barnes, who was investigated but not in-

dicted, was represented by Breitbart. Villano Affidavit at paragraph 6. In another state trial in New York County, involving weapons and drug charges, Barnes was represented by Breitbart but Goldberger and Feldman were allegedly present in the courtroom and conferred with Breitbart there. Id. at paragraph 7 and Neugarten Affidavit at paragraph 5. Breitbart also represented Barnes at a murder trial in Bronx County, Goldberger appearing for him at various bail hearings. Neugarten Affidavit at paragraph 4.

On other occasions, according to the government, attorneys from the Breitbart and Goldberger firms regularly substituted for one another at proceedings concerning Rice and James. In an attempted murder case in New York County that was dismissed in June, 1976, Rice was represented by Goldberger but Feldman spoke on his behalf at least once during the proceedings. Villano Affidavit at paragraph 9 and Neugarten Affidavit at paragraph 6. More recently, Lawrence Dubin, a partner in the Goldberger firm, represented Rice at a state parole violation hearing on November 18, 1982 (Neugarten Affidavit at paragraph 8) and also represented James at a *Nebbia* hearing before Magistrate Buchwald on December 22, 1982.

The government alleges that members of the Breitbart and Goldberger firms have had social, as well as professional, contacts with Rice, James and Barnes. Assistant United States Attorney Romano states that, in the course of investigating another case involving Barnes' drug-trafficking organization, he learned that a birthday party was given on October 15, 1976 for James and Barnes. Rice and several of Barnes' co-defendants at his 1977 federal trial were present. Photographs obtained in a court-authorized search apparently show that Feldman and Breitbart were also there. Romano Affidavit at paragraphs 2, 3 and 4.

Finally, Assistant United States Attorney Neugarten alleges in her affidavit that defendant Rice faces potentially more severe

---

1. Barnes was apparently represented by Breitbart following the dissolution of the Breitbart firm until sometime in 1981, when Howard Jacobs became his attorney.

punishment as a result of the pending charges against him than does James. It appears that he was on state parole in connection with a 5½-year-to-life sentence at the time of his arrest. If he is found to have violated parole, he may incur a much longer prison term on his state sentence. Rice also faces a stiffer sentence on the pending charges because the government plans to file an information charging him with being a previously convicted federal narcotics offender. (21 U.S.C. § 851.) Neugarten Affidavit at paragraphs 8 and 9.

The answering affidavits submitted by Goldberger and Feldman do not dispute the substance of these allegations. Feldman states that he agrees with "the factual recitations" contained in the government's affidavits. Goldberger denies having a social relationship with Barnes but admits that he appeared for Barnes at a bail hearing in Bronx County, that he "did on occasion discuss pending cases of Barnes with Breitbart," that there were "some discussions about trial strategy among the counsel retained" by the defendants at Barnes' 1977 federal trial, and that he "conferred with Breitbart, Feldman and Barnes" during that trial.

### I.

We discuss first the government's contention that the Goldberger firm must be disqualified because of the Breitbart firm's former representation of Barnes, whom the defense intends to call as a witness.[2] The principal danger posed by the Goldberger firm's continued representation of James and Rice is that questions directed to Barnes at trial may be based on information acquired by Goldberger and Feldman through their former attorney-client relationship with him. James and Rice have both been informed of the risks inherent in being represented by the Goldberger firm and have stated on the record that they

nevertheless wish to remain with their present attorneys.

The Second Circuit Court of Appeals has stated that, "[i]n determining whether the right of the accused to counsel of his own choosing should be honored in a particular case, we must balance the defendant's constitutional right against the need to preserve the highest ethical standards of professional responsibility." *United States v. Cunningham*, 672 F.2d 1064, 1070 (2d Cir.1982). The defendant's right to counsel of his own choosing, though "of constitutional dimensions," *United States v. Sheiner*, 410 F.2d 337, 342 (2d Cir.), *cert. denied*, 396 U.S. 825, 90 S.Ct. 68, 24 L.Ed.2d 76 (1969), is "not ... absolute." *United States v. Ostrer*, 597 F.2d 337, 341 (2d Cir. 1979). It must be interpreted in light of a district court's duty to maintain the integrity of its bar. In carrying out this duty, a court may seek guidance from the ethical strictures of the American Bar Association Code of Professional Responsibility.[3] *Fund of Funds, Ltd. v. Arthur Anderson & Co.*, 567 F.2d 225, 227 n. 2 (2d Cir.1977). In its most recent pronouncement on this issue, the Court of Appeals held that, under certain circumstances, a criminal defendant could make a "knowing and intelligent" election to be represented by a particular attorney despite the existence of a conflict of interest. *United States v. Curcio*, 680 F.2d 881 (2d Cir.1982) (*"Curcio I"*).

In *Cunningham, supra,* the case which most closely resembles the present one on its facts, the government moved to disqualify defense counsel on the ground that he had previously represented one of the defendant's associates, who was to be a government witness at the trial. While the attorney had represented the defendant for more than six years, he had appeared on behalf of the witness only once. The witness did not join in the government's dis-

---

**2.** Because Barnes is presently cooperating with the government, he would presumably testify for the defense as a hostile witness.

**3.** Canons 4, 5, and 9 are most relevant here. Canon 4 states that "A lawyer should preserve the confidences and secrets of a client." Can-

on 5 states that "A lawyer should exercise independent professional judgment on behalf of a client." Canon 9 states that "A lawyer should avoid even the appearance of impropriety."

qualification motion, although he did state that he was not willing to waive his attorney-client privilege. The court noted that the government's interest in disqualifying the attorney was "relatively weak" and held that, "In the circumstances, if Cunningham's right to counsel of his choice conflicts with his right to an attorney of undivided loyalty, we think the choice as to which right is to take precedence should be left to Cunningham and not be dictated by the government." 672 F.2d at 1071, 1073.

■ Here, by contrast, the prospective witness—Barnes—has joined in the government's motion to disqualify the Goldberger firm. He has also indicated that he intends to assert his attorney-client privilege if questioned about confidential matters on the stand.[4] Moreover, the government's interest in seeking the disqualification is substantial. Barnes is now cooperating with the government in an investigation that apparently has already led to several indictments. If Barnes' testimony could be impeached through the Goldberger firm's exploitation of a previous attorney-client relationship with him, the likelihood of obtaining convictions in this case could be greatly diminished.[5] As in *Cunningham*, the attorneys sought to be disqualified here have represented the defendants for several years. However, in contrast to *Cunningham*, Goldberger's and Feldman's past association with Barnes was not brief. Rather, they and their partner Breitbart regularly represented Barnes in connection with a variety of criminal charges brought against him in both federal and state courts.

Under these circumstances, we conclude that "the choice as to which right [of the defendants] is to take precedence," *Cun-*

*ningham*, 672 F.2d at 1073, should not be left to James and Rice. *Curcio I's* interpretation of *Cunningham* makes it clear that the *Cunningham* holding applies in cases "where the former client does not seek disqualification and his rights can be adequately safeguarded." 680 F.2d at 885. Since neither of these conditions is satisfied here, a knowing and intelligent waiver by the defendants cannot defeat the government's motion to disqualify their attorneys. Instead, the decision whether to disqualify must be based on the balancing process described above.

We are mindful that in a criminal case the defendant's interest is stronger than in the civil context, due to the Sixth Amendment's guarantees. Both James and Rice have stated that the length of their relationship with the Goldberger firm was a factor in their decisions not to change attorneys in spite of the possible conflict of interest involved. However, proper regard for "the highest ethical standards of professional responsibility" suggests that the continued representation of James and Rice by the Goldberger firm will give rise to impermissible conflicts of interest.

The rule in this circuit is that "an attorney may be disqualified pursuant to Canon 4 if he has accepted employment adverse to the interests of a former client on a matter substantially related to the prior litigation." *Allegaert v. Perot*, 565 F.2d 246, 250 (2d Cir.1977). As long as the prior matters involving Barnes are "substantially related" to the present case, the government need not show that either attorney in fact received confidential information from Barnes. *Government of India v. Cook*

---

4. The defense's argument that Barnes has waived his attorney-client privilege by entering into an agreement to cooperate with the government is not convincing. While there does not appear to be any authority directly on point, the Second Circuit Court of Appeals in *Cunningham* clearly assumed that the cooperating witness there had retained his attorney-client privilege. 672 F.2d at 1073–74. The same should be true in a case such as this, where the defense itself plans to call Barnes as a witness.

5. Indeed, this case suggests that whenever a convicted defendant decides to cooperate with the government and inform on his alleged prior associates, the lawyers who served him at the trial leading to his conviction should be disqualified from representing those associates under Canon 4 of the Code of Professional Responsibility. Only in this way can we be sure that the integrity of the criminal process, including the right of a convicted defendant to meaningfully cooperate with the government, will be protected.

*Ind.'s, Inc.*, 569 F.2d 737, 740 (2d Cir.1978). We are satisfied that the relationship between the Barnes matters and the present case is substantial. Most of the charges brought against Barnes in the past concerned violations of the narcotics laws, the focus of the indictments in this case. Both James and Rice apparently were associated with Barnes' organization during the period when the Breitbart firm represented Barnes, making it likely that information acquired by Goldberger or Feldman from Barnes will bear directly on the use of an entrapment defense at trial.

Given a substantial relationship between the prior litigation and the current one, there is a rebuttable presumption that the attorney received confidential information in the course of representing the former client. *See Government of India*, 569 F.2d at 741 (Mansfield, J., concurring). The party seeking disqualification need only show that the attorney was in a position to acquire such information. *Allegaert*, 565 F.2d at 250. As partners of Breitbart who aided in the defense of Barnes on several occasions, Goldberger and Feldman were clearly in such a position. They attempt to rebut the presumption by arguing that their exposure to Barnes was limited, since Breitbart was his principal attorney at all times. However, the government's undisputed allegations concerning the extent of Goldberger's and Feldman's participation in the representation of Barnes do not support this argument. Furthermore, in light of the small size of the Breitbart firm (three partners), it is very likely that any matter worked on by one attorney in the firm would have been discussed with others. Goldberger's statement that he "did on occasion discuss pending cases of Barnes with Breitbart" strongly supports our conclusion that both attorneys were well-situated to receive confidences and secrets relating to Barnes.

The Goldberger firm has agreed that in its cross-examination of Barnes it would "limit all questioning about Barnes' activities which relate to the period of time that the 'Breitbart' firm represented Barnes, to questions formulated from matters of pub- lic record or from a source independent of Barnes or any conversations had with him." Letter to the court from Paul Goldberger and Jerry Feldman, dated January 6, 1983. Relying on *Cunningham,* the Goldberger firm contends that such an agreement is sufficient to guarantee that Barnes' right not to have privileged information disclosed will not be infringed here; it asserts that, contrary to what the government believes, such an agreement could be "policed" at trial without much difficulty. One of the reasons cited by the *Cunningham* court for its decision was the fact that the defendant agreed to have his attorney's cross-examination of the former client limited to matters disclosed in the former client's trial. *See also United States v. Armedo-Sarmiento,* 524 F.2d 591, 593 (2d Cir.1975). The crucial difference between this case and *Cunningham,* however, is that here Barnes, the former client, has joined in the government's motion. Hence it is clear that, in Barnes' view, his attorney-client privilege would not be adequately protected by the agreement which the Goldberger firm has proposed.

Other ethical considerations argue in favor of disqualification. Canon 9's directive to avoid "even the appearance of impropriety," while not itself a sufficient basis for granting a motion to disqualify, *see Armstrong v. McAlpin,* 625 F.2d 433, 444 (2d Cir.1980) (en banc), *vacated on other grounds,* 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981), provides additional support for the government's position. While we do not question the Goldberger firm's ethics, the interest of the public in the integrity of the judicial system would not be served by the firm's continued representation of James and Rice. Feldman's attendance at a birthday party given for James and Barnes, which is undisputed, has the appearance of impropriety. Moreover, if permitted to continue representing the defendants, Goldberger and Feldman would appear to be using their knowledge of a former client's wrongdoing to try to prove the innocence of men they knew to be his associates. In addition, we think that the

trial would be tainted by the appearance that the Goldberger firm was using information obtained by virtue of the former representation of Barnes. As in *Cheng v. GAF Corp.,* 631 F.2d 1052, 1059 (2d Cir. 1980), *vacated on other grounds,* 450 U.S. 903, 101 S.Ct. 1338, 67 L.Ed.2d 327 (1981), "[t]his case presents, therefore, both the danger of tainting the underlying trial and the unacceptable appearance of impropriety condemned in Canon 9."

We find that, balancing the defendants' qualified right to an attorney of their own choosing against the need to preserve the highest ethical standards of professional responsibility, the latter must prevail. The continued representation of James and Rice by the Goldberger firm could give the defendants an unfair advantage at trial and, in any event, would give the public an unfavorable impression of the administration of justice, in violation of Canons 4, 5, and 9. The situation would not be changed by a further allocution of the defendants (the alternative proposed by the government). For these reasons, the Goldberger firm will be disqualified.[6]

## II.

We turn now to the other ground alleged in the government's disqualification motion. Since James and Rice may not have identical interests in this case, *see* Neugarten Affidavit at paragraphs 8 and 9, the government contends that their interests may be compromised by joint representation of both defendants by the same firm.

---

6. Although the issue of law firm, as opposed to individual attorney, disqualification was not briefed by the parties or raised at oral argument, there is no question that the entire Goldberger firm, not only Goldberger and Feldman, must be disqualified here. Disciplinary Rule 5–105(D) provides: "If a lawyer is required to decline employment under a Disciplinary Rule, no partner, or associate, or any other lawyer affiliated with him or his firm, may accept or continue such employment." *See United States v. Uzzi,* 549 F.Supp. 979, 980 and n. 1 (S.D.N.Y.1982), *aff'd by summary order,* No. 82–1297 (2d Cir. Oct. 21, 1982).

7. Rule 44(c) provides:

In *Curcio I, supra,* the Second Circuit held that defendants could make a "knowing and intelligent" waiver of their right to representation free of such conflicts of interest. The court explained the duty of a district court in such cases to fully inform the defendants of their rights, to give the defendants an opportunity to question the court and/or outside counsel about the consequences of waiving those rights, and to afford the defendants time to consider their choice. 680 F.2d at 888–89. In *United States v. Curcio,* 694 F.2d 14, 27 (2d Cir. 1982) ("*Curcio II* "), the court recognized a defendant's waiver as "knowing and intelligent" where he "showed a grasp of the basic notion of a conflict of interest and was able to identify a few common examples" at a hearing three days later.

At the government's request and as required by Rule 44(c) of the Federal Rules of Criminal Procedure,[7] a hearing was held on December 13, 1982 for the purpose of informing defendants James and Rice of their rights and the conflicts of interest that might arise if they continued to be represented by the Goldberger firm. The court told the defendants that they had a "constitutional right to have a lawyer of [their] own choice represent [them]." Transcript of December 13, 1982 Hearing at 28 (hereinafter, "Tr. at ____"). The defendants were informed that, "The problem in all of these conflict of interest cases is that the lawyer for one reason or another can't represent you as well if he's representing two of you" and that "law firms have loyalties among the partners. They talk about each other's practice, they say things amongst them-

"Joint Representation. Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of his right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel."

selves and so that is not quite the same thing as if you have a completely independent lawyer." Tr. at 28, 29. As examples of potential conflicts of interest, the court pointed to situations where one defendant wants to testify in his own defense but the other does not; where one wants to cross-examine a government witness but the other does not; where one wants to call someone as a defense witness but the other does not; and where one wants to plead guilty but the other does not. Tr. at 29–30. The court also encouraged the defendants to talk to a "completely independent lawyer" about the problem and offered to appoint one to advise them if they could not afford one themselves. Tr. at 28, 31.

At a hearing held on December 17, each defendant informed the court that, after considering the points raised at the December 13 hearing, he wished to retain his present attorney. Rice stated that he had consulted a friend who was an attorney, who advised him that he did not see any conflict of interest. Both defendants manifested an adequate understanding of the problem. Under *Curcio I* and *II*, it would appear that each of the defendants made a knowing and intelligent decision to be represented by members of the same law firm.

However, because we have already concluded that further representation of James and Rice by the Goldberger firm would be improper for other reasons, the government's motion to disqualify the Goldberger firm is granted.[8]

It is So Ordered.

---

8. As the Court of Appeals for the Eighth Circuit recently stated in *State of Arkansas v. Dean Foods Products Co.*, 605 F.2d 380, 385–86 (8th Cir.1979):

"Clients who retain, are billed by, and pay a law firm, can reasonably expect, and often their problems require, that confidences disclosed to one lawyer in the firm will be shared with others in the firm. Indeed, the ability to bring various fields of expertise to bear on the client's problem often serves as a justification for practice as a firm and the very reason for the client's decision to retain the firm. If the reputation and status of the legal profession, and more importantly the freedom and opportunity of the public to obtain adequate legal counseling, are to be preserved, a client must have every reason to expect that disclosures to 'his' law firm will not be used against him by any member or associate lawyer in that firm."

*See also Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 n. 9 (7th Cir.1982).