WILLIAM F. KUNTZ, II, United States District Judge:
The Government moved to disqualify Robert "Bob" Walters, Esq. from representing defendant Frederick McCoy ("Defendant") in the above-captioned case ("Motion to Disqualify"). Gov't Mot., ECF No. 36. For the following reasons, the Government's Motion to Disqualify Mr. Walters is GRANTED.
FACTUAL AND PROCEDURAL BACKGROUND
On February 21, 2018, a grand jury in the Eastern District of New York returned a sealed indictment charging four defendants, including Frederick McCoy, with extortionate collection of credit conspiracy and extortionate collection of credit, in violation of 18 U.S.C. § 894(a), and discharging a firearm in furtherance of the extortion crimes and causing the death of another through use of a firearm, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(j)(1), respectively. Indictment, ECF No. 1.
In addition to the charged offenses, the Government is also currently investigating the Defendant, among others, for conspiring to harbor, and harboring a fugitive, in violation of 18 U.S.C. §§ 1071 and 371, and unlawful flight to avoid prosecution, in violation of 18 U.S.C. § 1073. Gov't Mot. at 3. This investigation stems from the Defendant's successful attempts at avoiding arrest on a federal warrant between March 1 and March 7, 2018 (and for months prior, by the New York City Police Department ("NYPD") ). Id. The Government is also investigating what role, if any, the Defendant's attorney, Mr. Bob Walters, played in the Defendant's ability to avoid apprehension during this period. Id.
On March 1, 2018, law enforcement agents attempted to arrest Defendant at one of his known addresses but were unsuccessful. Id. at 2. Later that day, agents went to the home of the mother of one of Defendant's children ("Witness-1"), whose car was allegedly used in the commission of the charged murder, and served her with a federal grand jury subpoena relating to the Government's ongoing investigation. Id. On March 5 or 6, 2018, Mr. Walters contacted the Government to inform them he would be representing Witness-1 and possibly the Defendant. Def. Opp'n at 3, 13, ECF No. 46.[1] At that time, Mr. *593 Walters informed the Government that he recognized there was a potential conflict in representing both Witness-1 and the Defendant. Id. at 3. Mr. Walters also informed the Government that he "also had communications with Mr. Frederick McCoy who wanted [his] representation in the instant matter and was 'just about' ready to surrender." Id. at 13.
Witness-1 appeared before the grand jury on March 7, 2018, and, that same day, Mr. Walters advised the U.S. Attorney's Office by e-mail that his representation of Witness-1 was terminated as of the date of the grand jury presentation. Id. at 3; Gov't Mot. at 2. Minutes after appearing with Witness-1 at the grand jury presentation and following a number of conversations with the Government about the timing of the Defendant's surrender, Mr. Walters drove the Defendant to the offices of the FBI to surrender. Gov't Mot. at 2-3.[2]
On March 8, 2018, the Government noted on the record during the arraignment of the Defendant its position that Mr. Walters suffered from numerous, serious conflicts of interest that may require his disqualification. Minute Entry dated March 8, 2018, ECF No. 23. Accordingly, the Court appointed Jeffrey Pittell, Esq., from the Court's CJA panel, to also appear for Defendant in future proceedings relating to the conflicts (if any). Id. On March 28, 2018, the Court scheduled a hearing pursuant to United States v. Curcio , 680 F.2d 881 (2d Cir. 1982), and ordered briefing by the parties prior to the hearing. Minute Entry dated March 28, 2018; Order dated April 4, 2018, ECF No. 38.
On April 3, 2018, the Government filed under seal its Motion to Disqualify Mr. Walters from representing the Defendant. Gov't Mot.[3] The Government argues that Mr. Walters not only suffers from an actual conflict due to the fact that he is presently the subject of an ongoing investigation into crimes relating to the offenses charged against his client, but he also suffers from a severe, potential conflict due to his representation of a key witness, Witness-1, who appeared before the grand jury in this case. Id. at 1. On May 4, 2018, Defendant responded to the Government's motion, asking the Court to move forward with the scheduled Curcio hearing and arguing that any potential conflicts were waivable by Defendant. Def. Opp'n at 17. On May 11, 2018, the Government replied to Defendant's Opposition. Gov't Reply, ECF No. 47.
On May 22, 2018, this Court held a Curcio hearing. At that hearing, this Court, inter alia : advised the Defendant of his right to representation by an unconflicted attorney; instructed the Defendant as to the dangers arising from the conflicts in this particular case; permitted the Defendant to confer with both Mr. Walters and Mr. Pittell and confirmed he had had enough time to do so; solicited from the Defendant his understanding of the conflicts *594 in a narrative form; solicited Mr. Walters' views on whether he could provide his client conflict-free representation; and solicited Mr. Pittell's views on the waivability of the conflicts. At the hearing, the Defendant waived his right to conflict-free counsel. However, Mr. Pittell informed the Court that the Government's Motion to Disqualify described an actual, unwaivable conflict.
LEGAL STANDARD
The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This constitutional guarantee generally ensures that an accused may be represented by any attorney who will agree to take his case. United States v. Perez , 325 F.3d 115, 124-25 (2d Cir. 2003) (citing United States v. Cunningham , 672 F.2d 1064, 1070 (2d Cir. 1982) ). The Second Circuit has "consistently recognized that the right of an accused who retains an attorney to be represented by that attorney is a right of constitutional dimension." Id. (internal citations and quotations omitted). Therefore, the "[c]hoice of counsel should not be unnecessarily obstructed by the court." United States v. Bernstein , 533 F.2d 775, 788 (2d Cir. 1976) ; see also United States v. Bubar , 567 F.2d 192, 203 (2d Cir. 1977) (recognizing a defendant's "constitutional right to be represented by counsel of his own choice"), cert. denied , 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977).
However, a "defendant's right to counsel of his choice is not an absolute one." United States v. Ostrer , 597 F.2d 337, 341 (2d Cir. 1979) (citations omitted). "The right to the effective assistance of counsel also includes the right to be represented by an attorney who is free from conflicts of interest." Perez , 325 F.3d at 125 (citing cases). "[W]hile a defendant generally may waive his Sixth Amendment right to an unconflicted attorney, 'the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.' " United States v. Fulton , 5 F.3d 605, 612 (2d Cir. 1993) (quoting Wheat v. United States , 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988) ). This guarantee may be violated if the attorney has "(1) a potential conflict of interest that result[s] in prejudice to the defendant, or (2) an actual conflict of interest that adversely affect[s] the attorney's performance." Perez , 325 F.3d at 125 (quoting United States v. Levy , 25 F.3d 146, 152 (2d Cir. 1994) ).
When the "specter of conflicts" arises, a district court must follow a series of steps to determine whether it should honor the right of the defendant to counsel of his choosing in a particular case. United States v. Cain , 671 F.3d 271, 293 (2d Cir. 2012). "At the initial, 'inquiry' stage, the court must 'investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all.' " Id. (quoting Levy , 25 F.3d at 153 ). "An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." United States v. Schwarz , 283 F.3d 76, 91 (2d Cir. 2002) (internal quotation marks and citation omitted). "In satisfying its inquiry obligation, the district court may rely on the representations of counsel as to his [or her] interest in the case and how any potential conflict might be cured." Cain , 671 F.3d at 293 (citation omitted).
"If the court is satisfied at the inquiry stage that there is no actual conflict *595 or potential for one to develop, its duty ceases." Id. (citation omitted). However, "if the initial inquiry establishes that the conflict is 'such that no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation,' the district court must immediately disqualify [the lawyer]." Id. at 293-94 (citation omitted); see also Perez , 325 F.3d at 125. In this situation, no waiver of the conflict is possible and, therefore, no Curcio hearing is required. Cain , 671 F.3d at 293. "Where an attorney labors under an actual conflict of interest, the public interest 'in ensuring that criminal trials are conducted within the ethical standards of the profession and that the legal proceedings appear fair to all who observe them' trumps a defendant's right to counsel of the defendant's choice and requires disqualification of the attorney." United States v. Scala , 432 F.Supp.2d 403, 405 (S.D.N.Y. 2006) (Kaplan, J.), aff'd , 266 Fed.Appx. 41 (2d Cir. 2008) (quoting Wheat , 486 U.S. at 160, 108 S.Ct. 1692 ). "In other words, the conflict is not waivable by the defendant." Id.
On the spectrum between no conflict and an actual conflict is an "attorney [who] suffers from a lesser [actual] or only a potential conflict." Perez , 325 F.3d at 125 (quoting Levy , 25 F.3d at 153 ). An attorney has a potential conflict of interest if "the interests of the defendant may place the attorney under inconsistent duties at some time in the future." United States v. Kliti , 156 F.3d 150, 153 n.3 (2d Cir. 1998) (citation omitted). Where the court determines such a conflict exists "but that it would not fundamentally impair the lawyer's representation, the district court should address the defendant directly and determine whether he wishes to make a knowing and intentional waiver of his right to conflict-free counsel in conformity with the procedures set out in Curcio , 680 F.2d at 888-90." Cain , 671 F.3d at 293. The court may then "accept a defendant's knowing and intelligent waiver of his right to conflict-free counsel and permit the defendant to be represented by the attorney of his choice." Perez , 325 F.3d at 125 (citations omitted).
However, as the Supreme Court articulated in Wheat v. United States , the district court is "allowed substantial latitude in refusing waivers of conflicts of interest ... where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial processes." 486 U.S. at 163, 108 S.Ct. 1692 ; see also Cain , 671 F.3d at 294 ("[D]istrict courts have broad latitude in making a decision whether to disqualify a defendant's chosen counsel." (citation omitted) ). "Federal courts['] ... independent interest in ensuring that criminal trials are ... ethical ... [and] fair," Wheat , 486 U.S. at 160, 108 S.Ct. 1692, coupled with the "potential for gamesmanship on the part of the defendant who waives a conflict only to later claim ineffective assistance," Cain , 671 F.3d at 294, necessitates affording the district courts broad latitude in refusing conflict waivers.
ANALYSIS
In its Motion to Disqualify, the Government alleges that Mr. Walters suffers from both an actual conflict of interest and a potential conflict of interest. The Court addresses each alleged conflict in turn.
A. The Government's Investigation of Mr. Walters
The Government avers that Mr. Walters suffers from an actual conflict because he is under investigation for his alleged role in helping the Defendant avoid arrest from March 1 to March 7, 2018. In response, Mr. Walters argues that he counseled Defendant to surrender without delay, but was under no obligation to "become an arm of law enforcement in the *596 process of surrendering Mr. McCoy." Def. Opp'n at 12.
"It is well-settled in this circuit that an actual conflict of interest exists when an attorney engages in wrongful conduct related to the charge for which the client is on trial." Fulton , 5 F.3d at 609 (citation omitted). Such cases belong to a narrow category of conflicts that are unwaivable because they are "so severe as to amount to per se ineffective assistance." Perez , 325 F.3d at 126 (referring to Fulton , 5 F.3d at 608 ). Where an attorney is alleged to have engaged in wrongful conduct "sufficiently related to the charged crimes" of the defendant, the attorney needs to be concerned not only with the interests of the defendant but also with the attorney's own "personal reputation, and more than that, the potential that he himself might be accused of a crime." Fulton , 5 F.3d at 608, 611 ; see also United States v. Jones , 381 F.3d 114, 120 (2d Cir. 2004) (finding conflict unwaivable where representation would be tainted by attorney's own "self-interest in avoiding criminal charges" and by possibility government would subpoena attorney to testify at trial regarding illicit relationship between his two clients).
As the Second Circuit explained in Fulton , when the government alleges that a defendant's counsel engaged in criminal conduct related to the charges for which the defendant is on trial, it creates one of two actual conflicts. 5 F.3d at 610. First, if the allegations are true, "the attorney may fear that a spirited defense could uncover convincing evidence of the attorney's guilty or provoke the government into action against the attorney." Id. "Moreover, the attorney is not in a position to give unbiased advice to the client about such matters as whether or not to testify or to plead guilty and cooperate since such testimony or cooperation from the defendant may unearth evidence against the attorney." Id. (citations omitted). "Second, even if the attorney is demonstrably innocent and the government['s] ... allegations are plainly false, the defense is impaired because vital cross-examination becomes unavailable to the defendant." Id. Whether allegations create an actual conflict "does not turn on whether they are true or false, or with or without 'some foundation.' " Id. "However viewed, the allegations present an actual conflict." Id.
At the May 22, 2018 Curcio hearing, this Court asked independent counsel, Mr. Pittell, whether he believed Mr. Walters suffered from an actual conflict as described in the Government's Motion to Disqualify. Mr. Pittell confirmed that he did in fact believe Mr. Walters suffered from an actual, unwaivable conflict.
This Court agrees with Mr. Pittell and the Government that Mr. Walters suffers from an actual, unwaivable conflict. The strength or lack thereof of the Government's case aside, Mr. Walters acted in such a way that his conduct is now intertwined with that of the Defendant's with respect to the time period of March 1 through March 7, 2018. The Government represents at trial that it may seek to prove, among other things, that upon becoming aware he was wanted by federal authorities, the Defendant attempted to avoid facing the charges, evidencing his consciousness of guilt. Gov't Mot. at 8. Because Mr. Walters may have been involved in misconduct that may be the subject of evidence in the instant case, the Court agrees with the Government that Mr. Walters suffers from an actual conflict. Mr. Walters now "plainly has his own interest in this case-an interest in not having anything come to light that might further complicate his personal situation." Scala , 432 F.Supp.2d at 406. Where a "conflict ... involves a bias arising out of *597 counsel's powerful self-interest in avoiding criminal charges or reputational damage" it is "of a different character than other conflicts" and no "meaningful waiver can be obtained." Fulton , 5 F.3d at 613. The Court takes no position on the merits of whether or not Mr. Walters actually engaged in misconduct-the Government's allegations are sufficient to create an actual, per se unwaivable conflict in this case. See id. at 612 ("[W]hen a government witness alleges that he has direct knowledge of criminal conduct by defense counsel, for purposes of constitutional analysis, we must treat such allegations as though they are credible.").
B. Mr. Walters' Prior Representation of Witness-1
The Government also alleges that Mr. Walters suffers from a potential yet severe conflict of interest given his prior representation of an important witness in this case, Witness-1. In response, Mr. Walters emphasizes that his representation of Witness-1 was "exceedingly brief" and without compensation, and argues there is no claim that Witness-1 was directly involved in the allegations underlying this proceeding. Def. Opp'n at 3, 11. Mr. Walters also contends that the Defendant's interests are not directly adverse to counsel's representation of Witness-1, and there is no confidential information of [Witness-1] in the current representation of [Defendant]." Id. at 17-18 n.2. However, as Mr. Walters admits, he does not know the identity of the Government's witnesses nor the nature of the testimony they will give. Id. at 4. In the absence of such foresight, Mr. Walters acknowledges a potential or actual conflict may exist. Id.
Lesser conflicts, such as an attorney's prior representation of a trial witness, are generally waivable. Perez , 325 F.3d at 127 (citing Fulton , 5 F.3d at 613 ). "Although such a conflict might require a defendant to abandon a particular defense or line of questioning, he can be advised as to what he must forgo; he can then seek the legal advice of independent counsel and make an informed judgment that balances the alteration in the trial strategy against the perceived effect of having to get a new and perhaps less effective defense counsel." Id. (internal quotations marks and citation omitted). In a multiple representation situation, the defendant should be advised by independent counsel of the dangers the representation may pose and make a knowing and intelligent decision that he wishes to continue to be represented by his attorney despite the attorney's representation of another defendant or witness. See id.
However, given the existence of an actual conflict of interest, see supra , the Court is required to disqualify Mr. Walters in this case. Accordingly, this Court does not reach the issues of whether the Defendant made a knowing and intentional waiver of his right to conflict-free counsel, or whether this Court would accept such a waiver if Defendant did, in fact, knowingly and intelligently waive his rights.
CONCLUSION
The Court concludes that Mr. Walters suffers from an actual, unwaivable conflict of interest that requires his disqualification. Accordingly, the Government's Motion to Disqualify is GRANTED.
SO ORDERED.

Given the multiple documents compiled in the Defendant's Opposition, the Court refers to the document's ECF pagination.

Additional factual details regarding Mr. Walters' alleged aid to the Defendant's flight and the Government's investigation thereof are laid out in the Government's Motion to Disqualify at ECF No. 36 and the Government's Reply at ECF No. 47, both of which were filed under seal.

In addition to its Motion to Disqualify, the Government also submitted a second letter providing the Court with additional information further supporting its Motion to Disqualify. Gov't Ex Parte Letter, ECF No. 37. The Government requested the additional letter be filed ex parte and under seal. The Government provided the ex parte filing to Mr. Pittell so that he could discuss its contents with the Defendant, but requested that both the Defendant and Mr. Pittell not discuss the submission with Mr. Walters. The Court granted the Government's request to file the letter ex parte . However, the Court has not considered the contents of the letter in making the instant decision.