UNITED STATES of America, Appellee,

v.

Frank JAMES and Wallace Rice, Defendants-Appellants.

Nos. 1072, 1073, Dockets 83–1026, –1027.

United States Court of Appeals, Second Circuit.

Argued March 31, 1983.

Decided May 3, 1983.

Philip Le B. Douglas, Asst. U.S. Atty., New York City (John S. Martin, Jr., U.S. Atty., S.D.N.Y., Roanne L. Mann, Asst. U.S. Atty., New York City, on brief), for appellee.

J. Jeffrey Weisenfeld, New York City (Goldberger, Feldman, Dubin & Weisenfeld, P.C., New York City, on brief), for defendants-appellants.

Before KEARSE, PIERCE and PRATT, Circuit Judges.

KEARSE, Circuit Judge:

Defendants Frank James and Wallace Rice appeal from an order of the United States District Court for the Southern District of New York, 555 F.Supp. 794, Dudley B. Bonsal, *Judge,* disqualifying their attorneys in a pending criminal prosecution. The four-count indictment charges James and Rice principally with possession of narcotics and diluents, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 844 (1976), and with conspiracy to distribute and possess with intent to distribute narcotics, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(A). When the defendants made known their intention to call as a trial witness one Leroy "Nicky" Barnes in support of a defense of entrapment, the government, joined by Barnes, moved to disqualify defendants' attorneys and their firm on the ground that they had previously acted as attorneys for Barnes and had been partners of Barnes's principal attorney with respect to related matters. The district court granted the motion. We affirm.

## I. BACKGROUND

The underlying facts do not seem to be in dispute. In 1978, Barnes was convicted,

after a ten-week trial in 1977 with more than a dozen codefendants (hereinafter "1977 Barnes trial"), of several violations of the narcotics laws, including engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848 (1976). His conviction, for which he received a sentence of, *inter alia,* life imprisonment without possibility of parole, was affirmed in part on the basis of evidence that Barnes was an organizer and boss of a large narcotics organization. *United States v. Barnes,* 604 F.2d 121, 155–58 (2d Cir.1979), *cert. denied,* 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980). Defendants James and Rice are allegedly long-time and close associates of Barnes in the narcotics business. They were not defendants in the trial that led to Barnes's 1978 conviction.

## A. The Law Firms

James and Rice are currently represented by the firm of Goldberger, Feldman, Dubin & Weisenfeld, P.C. (the "Goldberger firm"), whose partners are Paul A. Goldberger, Jerry Feldman, Lawrence Dubin, and J. Jeffrey Weisenfeld. In particular, Goldberger has appeared on behalf of James; Weisenfeld originally appeared on behalf of Rice, but has been replaced by Feldman as Rice's planned trial counsel.

Until nearly the end of 1977, Goldberger and Feldman were partners of David Breitbart in a three-man law firm called Goldberger, Feldman & Breitbart (the "Breitbart firm"). In December 1977, at the end of the 1977 Barnes trial, the Breitbart firm was dissolved and Goldberger and Feldman formed a new firm.

## B. Prior Representation of Barnes by Goldberger, Feldman & Breitbart

From the early 1970's until December 1977, Barnes was represented in a number of criminal proceedings, state and federal, by the Breitbart firm. He was represented in court principally by Breitbart. From time to time, however, Goldberger and/or Feldman also were present and conferred with Breitbart about Barnes's cases. Goldberger also represented Barnes at certain state court bail hearings and made arguments on his behalf. Feldman as well may have argued certain legal questions on Barnes's behalf in state court proceedings. In addition, in connection with one state court trial, Weisenfeld was often present in court and argued some legal questions on behalf of Barnes.

At the 1977 Barnes trial, Breitbart represented Barnes, and Goldberger and Feldman represented codefendants of Barnes. During the trial, Goldberger and Feldman conferred with Breitbart and Barnes; in addition, counsel for the various defendants collaborated on strategy and filed joint motions on behalf of all defendants. When the Breitbart firm was dissolved in December 1977 at the end of this trial, Goldberger and Feldman ceased to have any role in the representation of Barnes.

## C. The Motion To Disqualify

Sometime in 1981 or 1982, Barnes began cooperating with the government. Based at least in part on information furnished by Barnes, the present prosecution was commenced against James and Rice in October 1982. In December, defendants informed the government that they intended to call Barnes as a witness at trial in order to establish a defense of entrapment. The government quickly moved to disqualify Messrs. Goldberger and Feldman and their law firm from representing the defendants, supporting its motion with affidavits setting forth, *inter alia,* the above facts as to the attorneys' past representation of Barnes. Barnes joined the motion.[1]

In response to the motion, Goldberger and Feldman conceded most of the facts alleged by the government, including all of those discussed above. They argued, however, that they should not be disqualified because they had received no privileged communications from Barnes, except with respect to particular cases in which they

---

1. Barnes is no longer represented by Breitbart. His new counsel joined in the government's arguments in support of the disqualification motion.

had participated; because Barnes had waived any attorney-client privilege by cooperating with the government; and because even if there had been no waiver by Barnes, their continued representation of James and Rice would not interfere with Barnes's privilege. They pointed out that the present prosecution alleges wrongdoing in 1982 and not earlier, and that their contact with Barnes ended in December 1977 with the breakup of the Breitbart firm. Hence, they argued, they would be unable to use any information learned in confidence from Barnes in establishing that the 1982 acts were induced by the government. They also pointed out that Messrs. Goldberger and Feldman had represented James and Rice for some ten years, first as members of the Breitbart firm and then as members of their present firm, and that it would be a hardship for the defendants to change counsel.

In support of the need for disqualification to preserve Barnes's privilege, the government argued that the time periods were not so easily compartmentalized. It suggested that the entrapment defense was likely to elicit facts as to the longstanding relationship between Barnes and the defendants. Further, it observed that if the defendants sought to establish entrapment, the government would be entitled to prove James's and Rice's predisposition to commit the offenses charged. It anticipated that its proof of predisposition would draw heavily on the roles of James and Rice in Barnes's narcotics organization, thus creating a substantial relationship between issues in the present action and matters at issue in the prior representation of Barnes by the Breitbart firm.[2]

Goldberger and Feldman rejected the possibility that they might agree to restrict their questioning of Barnes to matters of public record. They suggested that they could "do[ ] away with any risk of exploita-tion" of Barnes's rights by "agree[ing] to limit all questioning about Barnes' activities which relate to the period of time that the 'Breitbart' firm represented Barnes, to questions formulated from matters of public record or from a source independent of Barnes or any conversations had with him." (Letter dated January 6, 1983, to Judge Bonsal from Goldberger and Feldman ("Defendants' January 6 letter").)

### D. Ruling of the District Court

In an order dated January 9, 1983 ("January Order"), the district court granted the motion. The court noted that Barnes himself had joined in the motion, and it ruled that his cooperation with the government could not be deemed a waiver of his attorney-client privilege.

The court found that the past association of Goldberger and Feldman with Barnes was neither brief, nor isolated, nor sterile. "Rather, they and their partner Breitbart regularly represented Barnes in connection with a variety of criminal charges brought against him in both federal and state courts," id. at 8; Goldberger and Feldman "aided in the defense of Barnes on several occasions," id. at 10, and hence were "clearly" in a position to receive confidential information, id. The court rejected the arguments of Goldberger and Feldman that their exposure to Barnes was limited because Breitbart was Barnes's principal attorney, finding instead that Goldberger and Feldman had "very likely" discussed Barnes's matters with Breitbart. Id.

The court indicated that there was a significant possibility that Goldberger and Feldman could exploit their prior confidential relationship with Barnes in questioning him, see id. at 8, stating that it was

satisfied that the relationship between the Barnes matters and the present case is substantial. Most of the charges

---

**2.** Originally the government indicated that it did not intend to call Barnes as its own witness. In March 1983, however, law enforcement officials arrested a number of individuals alleged to have been associates in Barnes's narcotics organization. Those arrested included James and Rice, and the government informed us at oral argument of this appeal that it expects that case to be consolidated with the present one and now expects that it will call Barnes as a government witness.

brought against Barnes in the past concerned violations of the narcotics laws, the focus of the indictments in this case. Both James and Rice apparently were associated with Barnes' organization during the period when the Breitbart firm represented Barnes, making it likely that information acquired by Goldberger or Feldman from Barnes will bear directly on the use of an entrapment defense at trial.

*Id.* at 10. The court considered the offer of Goldberger and Feldman to limit their examination of Barnes to " 'questions formulated from matters of public record or from a source independent of Barnes or any conversations had with him,' " *id.* at 11 (quoting Defendants' January 6 letter), but concluded that Barnes's rights could not be adequately safeguarded, *id.* at 9.

Accordingly, while mindful of a criminal defendant's Sixth Amendment interest in being represented by counsel of his own choosing, the court concluded that the interests of justice required that James's and Rice's preference to be represented by the Goldberger firm not be honored. This appeal followed.

## II. DISCUSSION

■ In this Court, as in the district court, defendants place principal reliance on our decision in *United States v. Cunningham,* 672 F.2d 1064 (2d Cir.1982), in opposition to disqualification.[3] We find *Cunningham* distinguishable in material respects, and, in light of the findings of the district court, we uphold the disqualification.

In *Cunningham,* the government moved to disqualify Cunningham's long-time counsel Michael Tigar because he had once represented one John Spain, whom the government planned to call as a witness at the trial of Cunningham. Spain had been tried on a charge of perjury in connection with a grand jury investigation of Cunningham's affairs. Tigar had advised Spain briefly in connection with Spain's preparation to defend this charge. His "representation of Spain was on a quite limited basis, in part because Spain and his principal counsel knew that Tigar represented Cunningham and would continue to do so." *Id.* at 1072. The perjury trial, at and prior to which Spain was represented by other counsel, ended in a mistrial, following which Spain pleaded guilty to a charge of criminal contempt. Cunningham, in opposing the government's motion to disqualify Tigar from representing him, expressed his willingness to have Tigar's cross-examination of Spain restricted to matters in the public record. These consisted chiefly of a recording of Spain talking with his psychiatrist, which was introduced at Spain's trial, and Spain's statements at his plea allocution. Spain was satisfied with the proposed limitation of Tigar's questioning of him, and he did not join the government's motion to disqualify Tigar. We held that, in all the circumstances, the interests of the public, the government, the witness, and the defendant could best be accommodated by leaving the decision whether Tigar was to represent Cunningham under those conditions to the discretion of Cunningham himself.

■ Our analysis here, as in *Cunningham,* begins with the recognition that the right of a defendant in a criminal case to counsel of his choice is a right of constitutional dimension but is not absolute. In the present case, although the interests of the

---

3. Defendants also contend here, as they did below, that Barnes's apparent disclosures to the government waived his attorney-client privilege. There is no basis in the present record for a finding of waiver. Insofar as questioning of the client is concerned "[t]he privilege attaches not to the information but to the communication of the information." *United States v. Cunningham, supra,* 672 F.2d at 1073 n. 8. The fact that Barnes is cooperating with the government does not suggest that he has disclosed his privileged communications. It is perhaps worth reiterating, however, that the attorney is barred from disclosing not only the confidential communications, but also such facts as he learned only from the confidential communications. Thus, the attorney is not permitted to ask his former client questions seeking to elicit information as to facts that the attorney learned only through such communications. *Id.*

defendants are similar to those of Cunningham in the sense that these defendants have been represented by their present counsel for a significant number of years and they prefer to continue with these attorneys,[4] we are inclined to agree with the district court's assessment that the interests of the government, the witness, and the public weigh more heavily here than they did in *Cunningham.*

First, the motion to disqualify in the present case is made not only by the government but by the former client as well. Barnes and his new counsel apparently view the risk of an intrusion into Barnes's privilege as substantial enough to seek the disqualification. This view is not unsupported by the history of the representation of Barnes, for unlike Tigar's representation of Spain in *Cunningham,* which was limited in both duration and subject matter, Goldberger and Feldman were members of a firm that represented Barnes for half a decade in a variety of matters. The district court found that each attorney aided in the defense of Barnes on several occasions and that they very likely were privy to confidential communications from Barnes. These findings are not clearly erroneous; indeed they are amply supported by the record, including the concessions made by defendants' attorneys before the district court. This circumstance in itself strongly suggests the granting of the disqualification motion:

> "disqualification motions should be granted where the attorney in question is potentially in a position to use privileged information obtained during prior representation of the movant.... Disqualification of counsel in such cases is rooted in notions of fundamental fairness; allowing an attorney to represent a client in a situation where he may use information obtained in the course of former representation of the client's adversary gives the client an 'unfair advantage.'"

*United States v. Cunningham, supra,* 672 F.2d at 1072 (quoting *United States v. Ostrer,* 597 F.2d 337, 339–40 (2d Cir.1979)); *see United States v. Curcio,* 680 F.2d 881, 890 n. 5 (2d Cir.1982).

Further, whereas Cunningham offered to restrict Tigar's questioning to matters of public record, the offer of the Goldberger firm is far more diffuse, seeking invocation of any "independent source." There is, in theory, no vice in the proposed questioning of a former client that springs from sources independent of the client. But, as a practical matter, when sources other than matters of public record are cited, they are substantially more difficult to verify—especially where, as here, counsel may well have received confidential information from the witness on a wide variety of matters over a long period of time—and the court's ability to protect the witness's privilege is proportionately weakened. The dangers are further highlighted by the nature of the questioning that can be anticipated. Defendants have indicated that they plan to show that Barnes was able to entrap them because of their lengthy association in Barnes's narcotics organization. The government, for its part, has said that it will seek to show that the defendants were predisposed to commit the crimes with which they are charged, also relying on defendants' long association with Barnes's organization. Given the past involvement of Goldberger and Feldman in the representation of Barnes in a variety of proceedings, as well as their actions in connection with the 1977 Barnes trial, which focused on the scope of the Barnes organization, the district court's finding that the relationship between that representation and the present case is "substantial" is not clearly erroneous.

In the circumstances, the district court's conclusion that the interests of Barnes, the former client, cannot be adequately safeguarded was not an abuse of discretion.

---

4. Because the district court concluded that the interests of justice required the disqualification of the Goldberger firm even over the objections of the defendants, it did not reach the stage of an allocution to determine if waivers by James and Rice would be knowing and intelligent.

Finally, the findings that the present issues are substantially related to the subject matter of the past representation, and that defense counsel quite likely have received confidential information from the witness, together with the court's conclusion that the witness's interests cannot adequately be safeguarded by the court, have a serious impact on the interests of the government and of the public. The government has an interest in protecting its witnesses from tactics that are unfair; the public's interest in having trials conducted fairly demands no less on behalf of any witness. The assessment of the fairness of an attorney's questioning of a former client must depend in large part on the view of the client. Only the client and the attorney know what confidential communications occurred. To the extent that, as in *Cunningham,* the client is sufficiently unconcerned about such questioning that he does not join in the motion to disqualify or does not find fault with the proposed prophylactic restrictions on examination, the interest of the government in disqualifying the attorney is normally quite weak. But where, as here, the client displays concern and the circumstances found by the court are supportive of the validity of that concern, the balance of fairness is different. Here, interrogation stemming from confidential communications, if that cannot be prevented by the trial judge, would give the defendants an advantage that is unfair. The burden of our ruling in *United States v. Ostrer, supra,* quoted with approval in *Cunningham,* is that even the constitutional dimension of a criminal defendant's right to counsel of his choice does not give the defendant the right to take advantage of his preferred attorney's confidential knowledge gained from prior representation of the witness.

The integrity of our system of justice demands that the interests of all concerned be accommodated as fairly as possible. We conclude that that integrity would not be furthered by approval of an arrangement so open to violation of significant interests that it is the trial judge's judgment that he will be unable to prevent abuse.

The order of disqualification is affirmed.