816 F.2d 674
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James A. ESPOSITO, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joseph SCUTELLA, Jr., a/k/a Little Joe, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert V. PIETRZAK, Defendant-Appellant.
 Nos. 86-5097, 86-5098 and 86-5115.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 5, 1987.
Decided April 13, 1987.
 
 Before RUSSELL and CHAPMAN, Circuit Judges, and SIMONS, Senior United States District Judge for the District of South Carolina, sitting by designation.
 Franklin Dorrah Cleckley; Thomas R. Ceraso; William P. Weichler (Leonard Ambrose, on brief), for appellants.
 David Allen Jividen, Assistant United States Attorney; Hunter P. Smith, Jr., Assistant United States Attorney (William A. Kolibash, United States Attorney; Betsy C. Steinfeld, Assistant United States Attorney; Beth H. Lurz, Special Assistant United States Attorney, on brief), for appellee.
 PER CURIAM:
 
 
 1
 On August 1, 1985, defendants Esposito, Scutella and Pietzrak were convicted on racketeering and narcotics charges in a joint trial held before a jury in the United States District Court for the Northern District of West Virginia. Their convictions resulted from a lengthy investigation culminating in the indictment of eleven persons on eighty-three (83) counts of federal criminal violations, all of which stemmed from illegal gambling and narcotics operations organized and supervised by Anthony Donald Spadafore. The narcotics operation involved the transportation of multi-kilo quantities of cocaine into West Virginia directly from Florida and Peru and the subsequent redistribution of the cocaine in West Virginia and Pennsylvania. Spadafore also established a gambling casino in Fairmont, West Virginia which operated from April to December 1981. Of the eleven original co-defendants only four went to trial--the appellants and Eileen Pietzrak. Carole Rae Olson eluded arrest until immediately prior to trial, and the other defendants plea bargained in exchange for their testimony. On December 15, 1985 the jury returned verdicts against Scutella, Pietzrak and Esposito on various counts, and the defendants were sentenced to lengthy prison terms. They have raised numerous issues on appeal, but we find them to be without merit and affirm.
 
 1. The Disqualification of Cleckley
 
 2
 The first issue, raised solely by Esposito who is himself a lawyer, is whether the district court abused its discretion when it disqualified Franklin D. Cleckley from representing Esposito after the government showed that a conflict of interest would likely arise from Cleckley's prior representation of four (4) government witnesses. One witness, Ralph Philip Spadafore, had earlier been represented by Cleckley in the present case but had discharged Cleckley and retained other counsel. Cleckley, along with Esposito, had also represented John Richard Spadafore and Donald Anthony Spadafore in 1977-78 on charges of copyright law violations. Again with Esposito, Cleckley had earlier represented Samuel T. Iaquinta on charges of controlled substance violations unrelated to the present case, but those charges were dismissed.
 
 
 3
 The government asserted that during those representations the former clients had made confidential statements to Cleckley that he could use to unfairly benefit Esposito. These former clients supported the government's contention by filing affidavits asserting their attorney-client privilege as to all statements previously made to Cleckley. The government argued that Cleckley's "successive representation" of the government witnesses and Esposito created the likelihood of, if not an actual, conflict of interest. Esposito objected to the government's motion, arguing that no grounds were stated for the proposed disqualification since Cleckley had represented John Spadafore, Donald Spadafore and Samuel Iaquinta on entirely unrelated matters and because Ralph Spadafore had earlier waived his right to object to multiple representation when he indicated his willingness to be represented by Cleckley. Cleckley filed an affidavit in which he asserted that he had learned nothing during his earlier representation of the witnesses that could benefit Esposito or be detrimental to the witnesses.
 
 
 4
 The district court, however, relying on the Second Circuit's decision in United States v. James, 708 F.2d 40 (2d Cir.1983), and the Eighth Circuit's decision in United States v. Agosto, 675 F.2d 965 (8th Cir.1982), cert. denied, sub. nom. Gustafson v. United States, 459 U.S. 834 (1982), rejected Esposito's arguments and granted the disqualification motion after finding that conflicts of interest were "likely to arise" if Cleckley was not disqualified. In an Order filed November 14, 1985, the district court found that "Cleckley's prior representation potentially puts him in a position to use privileged information obtained during his prior representation of the witness[es].... This problem is multiplied in the [case of] witnesses Samuel T. Iaquinta and Ralph Philip Spadafore, where general business matters were discussed and where the same indictment is involved respectively." The court also noted the applicability of the last sentence of Fed.R.Crim.P. 44(C) to successive representation cases. See Agosto, 675 F.2d at 970. That sentence provides that, "Unless it appears likely that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel." Since the district court believed it likely that a conflict of interest would arise, and in consideration for "the appearance of propriety, along with the government's interest in protecting its witnesses from tactics that could be unfair, and the public's interest in having trials conducted fairly....", the court disqualified Cleckley from representing Esposito.
 
 
 5
 On appeal Esposito argues that the district court violated his sixth amendment right to counsel when it disqualified Cleckley on grounds of a "potential" rather than "actual" conflict of interest.[1] We disagree with Esposito's arguments.
 
 
 6
 The sixth amendment guarantees to each criminal defendant the right to effective assistance of counsel, United States v. Cronic, 466 U.S. 648 (1984), and gives some protection to a criminal defendant's selection of retained counsel. Powell v. Alabama, 287 U.S. 45 (1932). The right to retain the counsel of one's choice is not absolute, however, for if the attorney had earlier represented or simultaneously represents an adverse witness in the case, a conflict may arise by virtue of the attorney's responsibilities to zealously represent the defendant and to preserve the confidences of other present and former clients. See Agosto, 675 F.2d at 971.
 
 
 7
 The conflicts presented in successive representation cases in which a former client has become an adverse witness may arise in a variety of ways. First, during the cross-examination of a former client the attorney may be tempted to violate the privilege and use information learned in the confidential communications between him and the witness to benefit the defendant. Agosto, 675 F.2d at 971. Second, counsel may hesitate to conduct a rigorous cross-examination of a former client for fear of breaching the confidential relationship. Such caution by the attorney might violate the defendant's sixth amendment right to effective assistance of counsel. Id. Third, the attorney's pecuniary interest in the future business of the witness may cause him to avoid trial tactics which, while beneficial to the defendant, may prejudice the former client. Again, this concern may cause an attorney to ineffectively represent his client. Id.
 
 
 8
 Esposito cites our decision in United States v. Young, 644 F.2d 1008 (4th Cir.1981), as support for his assertion that an attorney cannot be disqualified absent an actual conflict of interest. In Young we considered the defendant's post-conviction appeal on grounds that he was denied effective assistance of counsel because the attorney originally representing him in the case had, after being discharged by the defendant, represented a co-defendant in the same case. The defendant alleged that he had refused to take the stand in his own defense only because he feared that his previous counsel might elicit damaging confidential information on cross-examination. There, citing Cuyler v. Sullivan, 446 U.S. 335 (1980), we held that the mere possibility of a conflict of interest is insufficient to warrant the setting aside of a verdict. Thus, a conviction will not be reversed on due process grounds absent proof of an actual conflict.
 
 
 9
 In the case now before us we are concerned with the power of a district court to disqualify counsel before a conflict of interest taints the trial either to the benefit or detriment of the defendant. "At this stage in the proceedings there is of necessity less certainty as to whether conflicts arise and as to the nature of those conflicts. This is particularly so where the government files a motion for disqualification early in the proceedings." Agosto, 675 F.2d at 970. Esposito's reference to Young, therefore, does little to support his argument.
 
 
 10
 Thus, as recognized by the district court, the issue before us is akin to the issues addressed in United States v. O'Malley, 786 F.2d 786 (7th Cir.1986) (pre-trial disqualification where defendant's attorney had previously represented two government witnesses); United States v. James, 708 F.2d 40 (2d Cir.1983) (pre-trial disqualification where the defendants' attorneys had previously represented an adverse witness); United States v. Agosto, 675 F.2d 965 (8th Cir.1982) (pre-trial disqualification where defendant's attorney had previously represented a co-defendant); and United States v. DeLuna, 584 F.Supp. 139 (W.D.Mo.1984) (pre-trial partial disqualification of defendant's counsel who was already representing a co-defendant).
 
 
 11
 In Agosto, the Eighth Circuit considered the appeal of three convicted defendants whose defense counsel were disqualified by the district court prior to trial because of possible conflicts of interest. The court, in a well-reasoned analysis properly adopted by the district court below, determined that the final sentence of Fed.R.Crim.P. 44(C) applies to successive representation cases. Thus, "Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel." See Agosto, 675 F.2d at 970; see also United States v. Garcia, 517 F.2d 272 (5th Cir.1975) (defendant has the right to waive effective assistance of counsel).
 
 
 12
 While concern for fairness to the defendant is an aspect of the conflict problem, other important aspects and the ones operating here are the public's concern that trials be conducted in a fair manner, the government's concern that its case not be prejudiced by unfair cross-examination of its witnesses, and the witness' concern that confidential disclosures remain confidential. James, 708 F.2d at 46; accord O'Malley, 786 F.2d at 790. Thus, in assessing the merits of a disqualification motion the court must balance the interests of the defendant, the public, the government and the witness, along with basic concepts of fundamental fairness in view of the circumstances of the case. O'Malley, 786 F.2d at 790; accord Agosto, 675 F.2d at 970. The interests of Esposito and the government's witnesses are clearly adverse. Hence, if the district court found that Cleckley received confidential communications from his former clients and that the communications related to the case at hand in a manner that could taint the trial, the court should have balanced the interests of Esposito against the interests of the government, the witnesses and the public. That is exactly how the district court proceeded.
 
 
 13
 It is presumed that an attorney is privy to confidential communications in the course of his representing a client. United States v. Shepard, 675 F.2d 977, 980 (8th Cir.1982). This is so because for the court to require disclosure of the communications by the client would be tantamount to destroying the attorney-client privilege. Here, this presumption was supported by the witnesses' assertions in their affidavits. Thus, the court properly found that Cleckley was privy to confidential communications from the government's witnesses.
 
 
 14
 The court next considered whether the confidential disclosures related to Esposito's trial. It found that the confidential communications likely revealed information that Cleckley could have used to impeach the witnesses, whose credibility was vital to the government's case. This was especially true for Ralph Spadafore, whom Cleckley had earlier represented in the same case, and Iaquinta, whom Cleckley had earlier represented on an unrelated narcotics charge.
 
 
 15
 The court then balanced the opposing interests involved. Esposito's interest in retaining the counsel of his choice was certainly worthy of some protection. But the witnesses' affidavits made it clear that they viewed the risk of intrusion into their attorney-client privilege as substantial. We note that "[t]he assessment of the fairness of an attorney's questioning of a former client must depend in large part on the view of the client," since only the attorney and client know the extent of the confidential communications, and the court cannot require their disclosure. James, 708 F.2d at 46. Thus, as was stated in James:
 
 
 16
 To the extent that ... the client is sufficiently unconcerned about such questioning that he does not join in the motion to disqualify or does not find fault with the proposed prophylactic restrictions on examination, the interest of the government in disqualifying the attorney is normally quite weak. But where, as here, the client displays concern and the circumstances found by the court are supportive of the validity of that concern, the balance of fairness is different.
 
 
 17
 Id. In James the witnesses expressed their concern by filing motions of disqualification along with the government. Here the witnesses filed affidavits asserting their attorney-client privilege along with the government's motion. As did the court in O'Malley, 786 F.2d at 792, we find the affidavits sufficient evidence of the witnesses' concern and support for the disqualification motion.
 
 
 18
 Finally, the government's concern that its case not be unfairly prejudiced and the public's concern that the trial be fair also weighed in favor of disqualification. As the Seventh Circuit recognized:
 
 
 19
 [I]nterrogation stemming from confidential communications, if that cannot be prevented by the trial judge, would give the defendants an advantage that is unfair.... [E]ven the constitutional dimension of a criminal defendant's right to counsel of his choice does not give the defendant the right to take advantage of his preferred attorney's confidential knowledge gained from prior representation of the witness.
 
 
 20
 James, 708 F.2d at 46. Accordingly, Esposito's right to counsel of his choice must give way when public confidence in the integrity of the legal system is undermined by unqualified protection of the right. See United States v. Hobson, 672 F.2d 825 (11th Cir.1982), reh. denied, 677 F.2d 117 (1982), cert. denied, 459 U.S. 906 (1982); United States v. DeLuna, 584 F.Supp. 139, 140 (W.D.Mo.1984). We find that the district court properly weighed these competing interests. Since our review of the disqualification order is limited to a review for abuse of discretion and any doubt must be resolved in favor of disqualification, Agosto, 675 F.2d at 970, we affirm the disqualification Order.
 
 2. Esposito's Motion for a Continuance
 
 21
 Esposito's second claim on appeal is that the district court abused its discretion when it refused to grant Esposito's motion for a continuance after the court disqualified Cleckley from representing Esposito seventeen days before the trial began. On October 11, 1985 the government filed a motion to disqualify Cleckley as counsel for Esposito. Esposito filed his response on October 31, 1985, the day of the hearing on the motion. In an affidavit attached to Esposito's response, Cleckley stated that he was primary counsel and that he had hired Frank Sansalone to assist him in preparation of the case in primarily an investigative capacity. In fact, Sansalone was Esposito's counsel of record and had appeared before the court in pretrial matters numerous times. The court disqualified Cleckley on November 1, and Esposito moved for a continuance on November 5 so that he could hire new counsel.
 
 
 22
 At a hearing on November 12 the district court found that Sansalone and Esposito had represented to the court that Sansalone was acting as Esposito's general counsel. Sansalone then stated that he was willing to serve as general counsel, but Esposito refused his representation on grounds that he was not a criminal defense attorney and was, therefore, not competent to act as defense counsel. Esposito, himself a criminal lawyer, then told the court that he would represent himself but requested a continuance. The court, finding that Esposito, Cleckley and Sansalone were negligent in not arranging for substitute counsel in the event that the government's disqualification motion was granted and finding that Esposito had voluntarily discharged his general counsel, refused Esposito's request for a continuance since the continuance would have disrupted the trial schedule and Esposito had not shown good cause for delay. On November 14, just four days before trial, Esposito hired Scott Segal as trial counsel. Segal immediately moved for a continuance, which the court again denied.
 
 
 23
 Esposito argues that by denying him a continuance the court denied him his sixth amendment right to a "fair opportunity" to secure the counsel of his choice. He suggests that the court should have inquired more deeply into the need for a continuance, the adequacy of Sansalone as defense counsel and the harm resulting if a short continuance was granted. Esposito also contends that we should hold as a matter of law that Segal's three-day period of preparation was insufficient time to prepare for trial and that the circumstances of this case are sufficient to create a presumption of prejudice under the rule of United States v. Cronic, 466 U.S. 648 (1984). Finally, Esposito claims that the district court's denial of his motion violated the spirit and purpose of 18 U.S.C. Sec. 3161(C)(2) (1982). We are unpersuaded by Esposito's arguments and affirm.
 
 
 24
 Initially, we note that a district court possesses wide discretion in ruling on a motion for a continuance and his decision may be reviewed only for abuse of that discretion based on the circumstances of the particular case. United States v. Gaither, 527 F.2d 456 (4th Cir.1975), cert. denied, 425 U.S. 952 (1976). Furthermore, we note that:
 
 
 25
 [T]rial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates the right to the assistance of counsel.
 
 
 26
 Morris v. Slappy, 461 U.S. 1, 11 (1982), quoting Ungar v. Sarafite, 376 U.S. 575, 589 (1964).
 
 
 27
 The sixth amendment guarantees to a criminal defendant the "fair opportunity" to retain the counsel of his choosing, but that right is qualified and must be weighed against the state's interest in proceeding with prosecutions in an orderly and timely fashion. Sampley v. Attorney General of North Carolina, 786 F.2d 610 (4th Cir.1986), cert. denied, 106 S.Ct. 3305 (1986). The proper method for balancing these countervailing interests in situations where the defendant has requested a continuance on grounds that he is without counsel has been succinctly stated in Sampley: "[T]he court requested to grant the continuance must ... make a judgment whether this results from the lack of a fair opportunity to secure counsel or rather from the defendant's unjustifiable failure to avail himself of an opportunity fairly given." Id. at 613.
 
 
 28
 A request for a continuance is never justifiable if it proceeds from a "transparent ploy for delay." Morris, 461 U.S. at 13. Esposito's request seems to be just that. Esposito had earlier moved for a severance of his trial from that of his co-defendants on August 21, 1985 on grounds that if tried jointly he would be prejudiced by the great amount of evidence introduced against his co-defendants. The district court denied this motion as well as Esposito's subsequent motion for a continuance on November 12. As the court admonished Esposito and his counsel at the November 12 hearing, "this is a case that brings forth witnesses from all over the United States and bringing in great numbers of jurors, and then all at once you ... set up your own negligence and failure to go ahead and carry out your duties, as grounds for a continuance." The court found that Esposito had a fair opportunity to retain acceptable counsel since he had received notice of the pending motion to disqualify Cleckley forty (40) days before trial. We agree and hold that the district court did not deny Esposito a fair opportunity to retain counsel of his choice and did not abuse its discretion.
 
 
 29
 Esposito also contends that the fact that Segal had at most four days to prepare for the trial warrants a presumption of prejudice, requiring reversal. In United States v. Cronic, 466 U.S. 648 (1984), the Court held that it is normally inappropriate to presume ineffective assistance of counsel without an inquiry into counsel's actual performance at trial. The Court recognized, however, that circumstances may sometimes be so egregious as to warrant a presumption of ineffective assistance of counsel without inquiry into the actual conduct of the trial. Id. at 659-60. The Court referred to Powell v. Alabama, 287 U.S. 45 (1932), as such a case. There, the defendants, "young, ignorant, [and] illiterate," were indicted for a highly publicized capital offense. On the first day of the trial a lawyer from Tennessee appeared for the first time on behalf of "persons 'interested' in the defendants." The trial court decided that the attorney would represent the defendants that day though he knew little about the case and little about local procedure. The Supreme Court, upon review, found it unnecessary to examine counsel's performance at trial because "the likelihood that he could have performed as an effective adversary was so remote as to have made the trial inherently unfair." Cronic, 466 U.S. at 66-61; see also Davis v. Alaska, 415 U.S. 308 (1974) (counsel denied the right of effective cross-examination).
 
 
 30
 In Cronic, however, the Court noted that a presumption of ineffective counsel does not arise in every case in which counsel belatedly begins representation of a defendant. See Morris v. Slappy, 461 U.S. 1 (1983) (new counsel assigned to represent the defendant six days before trial); Avery v. Alabama, 308 U.S. 444 (1940) (counsel appointed in a capital case only three days before trial). The Court, in fact, refused to adopt the presumption in the case before it though the defendant's appointed counsel, whom the trial court had appointed only 25 days before the trial, was a young real estate lawyer with no criminal law experience and had never previously tried a case before a jury.
 
 
 31
 We believe that the circumstances in this case do not warrant a presumption of ineffective counsel. The circumstances surrounding Esposito's trial do not rise to the level of presumptive prejudice found in Powell. Unlike the young, illiterate and ignorant defendants in Powell, who necessarily relied on the state to appoint their counsel, Esposito was an experienced criminal lawyer who could readily afford private counsel and had been preparing his case along with Cleckley and Sansalone for several months prior to trial. Thus, he was neither helpless nor without opportunity to retain counsel. Rather, Esposito, like the defendants in Sampley, 786 F.2d 610; United States v. Wright, 797 F.2d 171 (4th Cir.1986); and Griffin v. Aiken, 775 F.2d 1226 (4th Cir.1985), cert. denied, 106 S.Ct. 3301 (1986), played a "dangerous game" in trying to manipulate his right to counsel in an effort to either create a need for a continuance or to create error. Esposito and his counsel were given forty days notice of the possibility that Cleckley might be disqualified. They also were aware of the complex logistics surrounding the trial, given its scope and the number of defendants. These factors weighed heavily against a continuance. But rather than arranging tentatively for new counsel when he had the opportunity, Esposito did nothing until Cleckley was disqualified and then refused Sansalone's offer to continue as trial counsel on grounds that he was incompetent to handle the case.
 
 
 32
 The sixth amendment does not require that each criminal defendant be represented by an experienced criminal defense attorney, and representation need not be flawless to be effective:
 
 
 33
 The adversarial process protected by the Sixth Amendment requires that the accused have 'counsel acting in the role of an advocate'.... The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adverserial testing. When a true criminal trial has been conducted--even if defense counsel may have made demonstrable errors--the kind of testing envisioned by the Sixth Amendment has occurred. But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated.
 
 
 34
 Cronic, 466 U.S. at 656. Unlike the attorney in Powell, who began representing the defendants the very day of the trial and with little knowledge of the case, Sansalone, having investigated the case and worked closely with Cleckley and Esposito on defense preparations, could surely have met the Cronic standard for effective assistance of counsel. Esposito, however, refused his services and hence, voluntarily deprived himself of representation by counsel throroughly familiar with his case. Esposito eventually retained Segal who, though hired after Sansalone's discharge, had the benefit of Cleckley's, Sansalone's and Esposito's preparation. We believe, therefore, that Segal had a sufficient opportunity to prepare Esposito's defense such that the government's case would be subjected to "meaningful adverserial testing." Thus, this case is markedly different from cases in which a presumption of ineffective counsel was found, and we do not find the presumption warranted.
 
 
 35
 Absent the presumption of ineffective counsel, we otherwise "presume that defense counsel is competent to provide the guiding hand that the defendant needs, ... [so] the burden rests on the accused to demonstrate a constitutional violation." Cronic, 466 U.S. at 658. Therefore, it is necessary that Esposito "show how specific errors of counsel undermined the reliability of the finding of guilt." Id. at 659, n. 26 (citations omitted). The record shows that Segal performed ably and Esposito has offered no evidence to prove Segal's inadequate trial performance. In fact, that Segal was effective as Esposito's counsel is made clear by the jury's acquittal of Esposito on several counts.
 
 
 36
 To summarize, Esposito has not shown that the judge abused his discretion since the complex logistics of the trial were a legitimate concern of the court and since Esposito had ample time to hire a new attorney, or could have retained Sansalone. See United States v. Gaither, 527 F.2d 456 (4th Cir.1975), cert. denied, 425 U.S. 952 (1976); United States v. Grow, 394 F.2d 182 (4th Cir.1968), cert. denied, 393 U.S. 840 (1968). Nor has Esposito proven ineffective assistance of counsel at his trial either by presumption or in fact. Accordingly, we find no merit in his sixth amendment claims.
 
 
 37
 We also disagree with Esposito's contention that the court violated 18 U.S.C. Sec. 3161(C)(2) by trying Esposito less than thirty days after he retained Segal as trial counsel. Section 3161(C)(2) provides that "trial shall not commence less than thirty days from the date on which the defendant first appears through counsel or expressly waives counsel and elects to proceed pro se. Since Esposito first appeared through counsel on August 7, 1985 when Sansalone and Cleckley were representing him the requirements of Section 3161(C)(2) were met. See United States v. Darby, 744 F.2d 1508 (11th Cir.1984), reh. denied, 749 F.2d 733 (1984), cert. denied, sub. nom. Yamanis v. United States, 471 U.S. 1100 (1985).
 
 3. Scutella's Fifth Amendment Claim
 
 38
 The next claim is asserted by Scutella who contends that the district court should have granted a mistrial after government witness Anthony Donald Spadafore made the unsolicited statement on direct examination that Scutella had earlier told him that "he took the fifth amendment during the grand jury's investigation." Scutella moved for a mistrial shortly after the statement was made on grounds that he had been unfairly prejudiced by Spadafore's statement. The district court, following an in camera hearing, found that Spadafore's remark was unanticipated by the government and unresponsive to the government's question. The court then denied the motion for a mistrial and later admonished the jury to disregard the statement despite defense counsel's request that the court not refer to the incident again. No further reference to the statement or to Scutella's exercise of the fifth amendment was ever made in the course of the trial.
 
 
 39
 Scutella argues that the statement was so prejudicial as to render his trial unfair despite the curative instruction. He also contends that since Spadafore made the statement before Scutella had presented his defense he was further prejudiced by having to reconstruct his defense strategy so as to minimize the prejudicial effect of the statement. Scutella argues that under the holding in Chapman v. California, 386 U.S. 18 (1967), the fifth amendment right to silence is so fundamental to a fair trial that an infraction of that right such as here is per se prejudicial, requiring a new trial.
 
 
 40
 The fifth amendment privilege against self-incrimination has long been revered as a fundamental constitutional protection for criminal defendants. It "registers an important advance in the development of liberty--'one of the great landmarks in man's struggle to make himself civilized.' " Ullman v. United States, 350 U.S. 422, 426 (1956) (citation omitted). The privilege insures that the government alone carries the burden of proving the guilt of an accused rather than subjecting one "suspected of crime to the cruel trilemma of self-accusation." Murphy v. Waterfront, 378 U.S. 52, 55 (1964). Acknowledging the importance of the privilege and the need to insure to defendants the freedom to assert it without thereby prejudicing their defense, the Supreme Court long ago stated that the fifth amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." Griffin v. California, 380 U.S. 609, 615 (1965).
 
 
 41
 In Chapman v. California, 386 U.S. 18 (1967), the Supreme Court considered whether there can ever be harmless constitutional error and whether it was harmless error in Chapman's trial for the state prosecutor to comment extensively upon Chapman's failure to testify and for the judge to charge the jury that it could draw adverse inferences from Chapman's silence. The Court found that some constitutional errors are so "unimportant and insignificant" in the setting of a particular case that they may be deemed harmless and not require reversal. Id. at 22. The Court also recognized, however, that "some constitutional rights are so basic to a fair trial that their infraction can never be treated as harmless error." Id. at 23.[2]
 
 
 42
 Significantly, the Court went on to apply a harmless error test to the fifth amendment violation in that case, stating that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Id. at 24. It found that the prosecutor's argument and the trial judge's instruction to the jury "continuously and repeatedly impressed the jury that ... by their silence petitioners had served as irrefutable witnesses against themselves." Id. at 25. The Court held that the actions of the prosecution and judge were not harmless given the circumstances and reversed the convictions. Id.; see also Doyle v. Ohio, 426 U.S. 610 (1976). (The Court held that "the use for impeachment purposes of petitioner's silence, at the time of arrest and after receiving Miranda warnings, violated the Due Process Clause of the Fourteenth Amendment." Id. at 619. The Court, however, did not consider whether the error was harmless because the government never raised the issue).
 
 
 43
 In Williams v. Zahradnick, 632 F.2d 353, 360-61 (4th Cir.1980), we applied a similar rule to a fifth amendment infraction by the government, holding that "an error is harmless only when the court, after assessing the record as a whole ... can conclude beyond a reasonable doubt that the error did not influence the jury's verdict." There, during a criminal trial, the prosecutor referred to the defendant's post-arrest silence in violation of the rule enunciated in Doyle. Among the factors we considered in Williams, although admittedly not exhaustive, were the amount of independent evidence indicative of guilt, the intensity and frequency of the reference, the use to which the prosecutor put the reference, and the opportunity for the trial judge to give curative instructions. Id. at 363-63. We also stated that "occasionally a witness will comment spontaneously on a defendant's silence. In those instances, so long as curative action is taken, and the prosecution has refrained from highlighting the testimony, such an unsolicited remark is less harmful than similar statements intentionally elicited." Id. at 362; see also United States v. Dixon, 593 F.2d 626 (5th Cir.1979) reh. denied, 597 F.2d 283 (1979), cert. denied, 444 U.S. 861 (1979) (found a Doyle violation harmless error); United States v. Sklaroff, 552 F.2d 1156 (5th Cir.1977), reh. denied, 555 F.2d 1391 (1977), cert. denied, sub. nom. Leppo v. United States, 434 U.S. 1009 (1978) (applying the harmless error rule to a Doyle violation in which government witness made an unsolicited remark).
 
 
 44
 The factors recognized in Williams substantially follow the Court's considerations in Chapman. Applying these factors to the case sub judice in which the evidence against Scutella was substantial and in which no further reference was made to Spadafore's statement after the curative instruction, we believe that the district court could have found "beyond a reasonable doubt that the remark did not influence the jury's verdict." Accordingly, we find that Scutella was not unduely prejudiced by Spadafore's statement.
 
 
 45
 We have reviewed the defendants' other claims as well and find them likewise without merit. Therefore, we affirm the district court's judgments of convictions.
 
 
 46
 AFFIRMED.
 
 
 
 [1]
 Esposito also argues that the witnesses waived their confidential communications privilege by disclosing the communications to the government. We find no support for this argument. It is the communications themselves that are protected rather than the information revealed. Thus, even if the witnesses disclosed information related to the subject of their confidential communications (and we have no evidence that they did), they did not waive their privilege. See, United States v. O'Malley, 787 F.2d 786, 794 (7th Cir.1986)
 
 
 [2]
 Examples of such infractions include the denial of a defendant's right to counsel, trial by an impartial judge, and the admission into evidence of a coerced confession. See Chapman, 386 U.S. at 23 n. 8