935 F.2d 267
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Donald Milton BOYSAW, Petitioner-Appellant,
v.
G.E. DEANS; Attorney General of the Commonwealth of
Virginia, Respondents-Appellees.
 No. 89-7794.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 8, 1991.
Decided May 31, 1991.
 
 Appeal from the United States District Court for the Western District of Virginia, at Roanoke. James C. Turk, Chief District Judge. (CA-88-522-R)
 Janice A. Hornaday, Third-Year Law Student, Post Conviction Assistance Project, University of Virginia School of Law, Earl Carlyle Dudley, Jr., University of Virginia School of Law, Charlottesville, Va., for appellant.
 Hazel Elizabeth Shaffer, Assistant Attorney General, Office of the Attorney General, Richmond, Va. (Argued), for appellees; Mary Sue Terry, Attorney General of Virginia, Office of the Attorney General, Richmond, Va., on brief.
 W.D.Va.
 VACATED AND REMANDED.
 Before MURNAGHAN and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Appellant Donald Boysaw was arrested on January 9, 1986, and charged with receiving stolen property. He was then on probation in connection with earlier convictions, and it was alleged that the new charges constituted violations of that probation. Boysaw was thus held in jail and appeared on January 15, 1986, for a bond hearing relating to the alleged probation violation. At that hearing, Boysaw was represented by retained counsel, Byron R. Stankman, Esq. Bond was set in connection with the alleged probation violation at $100,000.
 
 
 2
 Boysaw then retained a new attorney, Robert A. Lowman, Esq., who moved for a reduction of the bond. Lowman represented Boysaw at a hearing on the motion to reduce bond on February 14, 1986. The bond was not reduced, and Boysaw remained in jail.
 
 
 3
 Boysaw was indicted on May 27, 1986, on ten counts of larceny and receiving stolen property. Trial was set for June 25, 1986.
 
 
 4
 Roughly two weeks after the indictment was returned and two weeks before trial, on June 11, 1986, Lowman met with the trial judge, Hon. A. Dow Owens of the Circuit Court for Pulaski County, Virginia, and apparently asked to be relieved of his representation of Boysaw. There is no record of what transpired at that meeting, but later the same day Lowman wrote to Judge Owens following up on their conversation and reporting on an intervening conversation with Boysaw. Lowman told the judge that Boysaw had stated "that he had never hired me as an attorney to represent him on his felony charges and that the only purpose in retaining me was an attempt to get the bond lowered and get him out of jail." He added that Boysaw had told him "that I was discharged from any further responsibility to him and that he was without funds to hire an attorney." Lowman conveyed Boysaw's request that the court appoint a lawyer to represent him at trial. Apparently referring to his earlier meeting with the judge, Lowman concluded, "As I told you, I feel I cannot represent Mr. Boysaw for reasons I cannot divulge to the Court."
 
 
 5
 The following day Judge Owens replied by letter, refusing to relieve Lowman of his representation of Boysaw. The judge stated only that "You have previously for some long period of time represented that you were attorney for Donald M. Boysaw, and I must hold you to this representation unless I receive a letter from Mr. Boysaw stating that you do not represent him, and requesting a general continuance."
 
 
 6
 The record does not contain any letter from Boysaw to the court, but four days later, on June 16, 1986, the court convened a hearing, apparently to deal with the question of Boysaw's representation at the scheduled trial. Boysaw, at his own request, was brought from jail to the hearing. The prosecution was represented at the hearing by Commonwealth Attorney Everett P. Shockley, Esq. Neither Lowman nor any other attorney appeared for Boysaw.
 
 
 7
 At the hearing Shockley made the following representations to the court:
 
 
 8
 Uh, Your Honor, I spoke with Mr. Lowman just a few minutes, uh, sometime after lunch.... And, of course, he wrote a letter to the Court. And for two (2) reasons, he was asking to be relieved from representing Mr. Boysaw. Number 1, that Mr. Boysaw doesn't consider him to be his attorney, and also a potential ethical problem that's confronting him that he cannot divulge to the Court.... [A]s I gathered from talking with Mr. Lowman, there appears to be an empass [sic ] at this time between him and Mr. Boysaw. They apparently are not communicating too well.
 
 
 9
 Shockley expressed concern as to whether the case was in a posture to proceed to trial and asked for clarification.
 
 
 10
 Judge Owens inquired of Boysaw whether Lowman represented him. The following colloquy ensued:
 
 
 11
 DEFENDANT: No. I just hired him for the bond hearing. That's what we--
 
 
 12
 COURT: Uh-huh. Well, who is your attorney for the charges?
 
 
 13
 DEFENDANT: I don't have one.
 
 
 14
 COURT: Who do you want?
 
 
 15
 DEFENDANT: I'd like to get somebody maybe from Radford.
 
 
 16
 COURT: Well, Mr. Lowman is from Radford. Mr. Lowman will be your attorney for the trial. Mr. Lowman is familiar with the case.
 
 
 17
 The court made no inquiry concerning the circumstances of Boysaw's discharge of Lowman, or the reasons behind Shockley's statements that Boysaw and Lowman were at an impasse and were not communicating too well. Nor did the court seek to explore the nature of the "potential ethical problem" referred to by Shockley, or why the absent Lowman had said, "I cannot represent Mr. Boysaw." Instead, he engaged in unprompted speculation:
 
 
 18
 Now, I don't know what the ethical considerations are. We'll have to cross those as we come to them. If Mr. Lowman is aware of some intent on behalf of his client to testify falsely, or improperly, then he, at that point, can comply with the case decisions on it, which as I understand and remember would just let him withdraw from participating in that at the time.
 
 
 19
 Mr. Shockley at that point hastened to state to the court that
 
 
 20
 to my knowledge, Mr. Boysaw has not made any representation along those lines to the court about--excuse me--Mr. Lowman hasn't ... [a]bout Mr. Boysaw possibly testifying false [sic]. I just want the record to be clear that you're talking about a hypothetical.
 
 
 21
 Judge Owens then agreed: "I'm just speculating. I don't know what Mr. Lowman is talking about." The judge then returned to the subject of Lowman's continued representation of the defendant:
 
 
 22
 COURT: Mr. Lowman has represented to this Court all along for a long period of time that he represents Mr. Boysaw, and he does--
 
 
 23
 DEFENDANT: ... (inaudible) ...
 
 
 24
 COURT: Sir?
 
 
 25
 DEFENDANT: I said it concerns me.
 
 
 26
 COURT: Well, O.K. You mean, you haven't paid him?
 
 
 27
 DEFENDANT: Well, I paid him all I could pay him.
 
 
 28
 COURT: Well, O.K. Then that's all he'll get, because he's represented to the Court that he represents you. Mr. Shockley, I'm gonna ask you to--I did let Mr. Lowman know that he represents him. I'll ask you to confirm that by another letter to him.
 
 
 29
 MR. SHOCKLEY: O.K.
 
 
 30
 After some discussion of scheduling and anticipated motions, the hearing concluded with the court cutting off a third attempt by Boysaw to express his discomfort with the situation:
 
 
 31
 COURT: O.K. So, he represents you.
 
 
 32
 DEFENDANT: What about, uh, do I have a chance for like a discovery hearing? You know, so far as of today, I don't even know, you know, ... (inaudible) ...
 
 
 33
 COURT: Mr. Boysaw, you now, you will have to take these matters up with Mr. Lowman. I can't answer your legal questions for you. But Mr. Lowman has been familiar with your case and has represented you for a long period of time, several months.
 
 
 34
 The trial commenced as scheduled on June 25, 1986. Shockley stated that the Commonwealth intended to proceed on only two of the ten charges and that those two counts would be reduced from larceny to receiving stolen property. Lowman then announced that he was ready to proceed on the defendant's behalf, but promptly amended his statement: "Judge, we're ready to proceed subject to calling our witnesses, assuming that all our witnesses are here." At a hearing in chambers the Commonwealth Attorney exhibited detailed knowledge of the witnesses the defense had tried to subpoena, but Lowman was unable to recall at least some of them without retrieving his notes from the courtroom. It emerged that the subpoenas were not delivered to the Clerk's Office for service until two days before the trial. When challenged by the court, Lowman sought to excuse his tardiness in light of the confusion over his status as counsel:
 
 
 35
 MR. LOWMAN: I got together with Mr. Boysaw and we, of course, went over this.... you know there was some question about my representation, and that sort of thing. And when that had been determined I got with him and got the list of witnesses, and I presented them on Friday, but the Clerk's Office said that the Sheriff Department wouldn't pick them up until Monday anyhow, so it didn't make any difference. They were served Monday, and that's the best I could do.
 
 
 36
 At least two of the proposed defense witnesses were never served with subpoenas and did not testify. The prosecutor reminded Lowman of available procedures to serve out-of-state witnesses.
 
 
 37
 As the trial proceeded, Lowman demonstrated a degree of uncertainty and confusion in the examination of witnesses. Moreover, Boysaw's continuing dissatisfaction with Lowman as his attorney surfaced again. At the close of the prosecution's case, a hearing was held in chambers at which Lowman stated to the court that "Mr. Boysaw is dissatisfied with that he feels [sic ] he is not getting a fair trial, and he is not getting proper representation." The particular dispute that prompted the chambers hearing concerned Boysaw's unhappiness that Lowman was not asking questions of government witnesses that he considered important to his defense. Lowman made clear his view that Boysaw's questions were not pertinent, and, after a brief exchange with Boysaw, Judge Owens quickly came to Lowman's defense:
 
 
 38
 COURT: I think, Mr. Boysaw, Mr. Lowman has asked some very pertinent questions, and some very telling questions. I think he's presented, at this point, considering that the Commonwealth is the one that's putting on his evidence, he's done an excellent job. Uh, I will decline to, at this stage, to appoint another attorney, Mr. Boysaw. Mr. Lowman has been practicing law for a long time. He's a skilled criminal lawyer. Of course, he can only work with what he has. And, uh, it's my observation, at this point, that he's done an excellent job.
 
 
 39
 On June 26, 1986, Boysaw was convicted on two counts of receiving stolen property. He was sentenced to five years' imprisonment on each count.
 
 
 40
 Boysaw appealed to the Court of Appeals of Virginia, asserting that he had been denied the effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution, made applicable to the states by the Fourteenth. Specifically, he protested that the trial court should not have appointed to defend him an attorney he had once retained in connection with the same charges and later discharged. On March 22, 1988, the Court of Appeals affirmed the convictions, and on September 22, 1988, the Supreme Court of Virginia denied further review.
 
 
 41
 Boysaw sought a writ of habeas corpus in the United States District Court for the Western District of Virginia. That court denied the requested writ on September 14, 1989, holding that Boysaw's trial counsel did not appear to have been ineffective and that Boysaw had waived any right to complain of the appointment of counsel by failure to make a timely objection.
 
 
 42
 Boysaw filed a timely notice of appeal on September 21, 1989.
 
 
 43
 The record cannot be read to sustain the conclusion that Boysaw waived his objection to the appointment of Lowman to represent him. The concern to avoid conflicts in representation by criminal defense counsel has sometimes led to holdings that a defendant cannot waive such conflicts even when he wants to. See, e.g., United States ex rel., Zembowski v. DeRobertis, 771 F.2d 1057, 1063 (11th Cir.1985) (trial judge has obligation to determine possibility of actual conflict). In any event, it is difficult to conceive what more Boysaw could or should have done to bring his opposition to Lowman's representation of him to the attention of the court. Three times at the hearing that resulted in Lowman's appointment Boysaw tried to explain his concerns to the court, and the trial judge cut him off. Boysaw even sought a hearing in the middle of trial to express his continuing dissatisfaction with Lowman's representation. There is insufficient support for the conclusion that waiver had occurred.
 
 
 44
 The Supreme Court has held that where defense counsel in a criminal case labors under an actual conflict of interest, a conviction of his client cannot stand. The harmless error doctrine does not apply in such circumstances because prejudice inheres in the conflict. Holloway v. Arkansas, 435 U.S. 475, 489-90 (1978).
 
 
 45
 The record in no way indicates that Lowman's or the appellant's attempts were motivated by an improper purpose. The rule of United States v. Gallop, 838 F.2d 105 (4th Cir.), cert. denied, 487 U.S. 1211 (1988)--heavily relied on by the government--which holds that a district judge may ignore a defendant's problems with his counsel when those problems are really "a transparent plot to bring about delay," is not applicable here. Even if we should accept that a factual proffer of the nature of the conflict could have been demanded by a trial court--despite the fact that that might have whipsawed the attorney and client between 1) being forced to divulge confidential or privileged information and 2) accepting conflicted counsel--the trial judge made no such demand here. He simply ignored the protestations of a criminal defendant facing felony charges, and those of the prosecutor, an officer of the court. It appears not improbable that even the prosecution was concerned that the request for new counsel should be heeded. In Wood v. Georgia, 450 U.S. 261 (1981), the terms of a remand to ascertain whether there was an actual conflict made it clear that, if an actual conflict was found, no showing of prejudice was necessary.[1]
 
 
 46
 An actual conflict of counsel is inherently prejudicial. United States v. Ramsey, 661 F.2d 1013, 1018 (4th Cir.1981), cert. denied, 455 U.S. 1005 (1981). Thus, if conflict of counsel is proven, a showing of the ineffectiveness of that counsel is unnecessary.[2] When the constitutional right to counsel has been violated "[a] conviction must be reversed ... even if no particular prejudice is shown and even if the defendant was clearly guilty." Holloway v. Arkansas, 435 U.S. 475, 489 (1977) (quoting Chapman v. California, 386 U.S. 18, 43 (1967) (Stewart, J., concurring)). This is so because "[t]he right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." Id. at 488 (quoting, Glasser v. United States, 315 U.S. 60, 75-76 (1942)).
 
 
 47
 In the present case, there has not as yet been a determination as to the existence, vel non, of the alleged conflict. Therefore, we vacate and remand to the district court for an evidentiary hearing and a determination as to the existence and nature of the alleged conflict. If such a conflict genuinely existed, then the district court must grant habeas relief, and Boysaw must be given a new trial with conflict-free counsel. If not, the denial of the habeas writ should be affirmed.
 
 
 48
 The state trial judge had a duty to investigate Boysaw's claim that his attorney was conflicted. The trial court was indeed on notice that problems existed. Lowman stated to the trial judge, "I cannot represent Mr. Boysaw for reasons I cannot divulge to the Court." He during trial returned to the subject, stating, "Boysaw ... feels ... he is not getting proper representation." Boysaw expressed dissatisfaction at not getting a fair trial. The prosecution recognized the existence in continued representation of Boysaw by Lowman of an undisclosed "ethical problem" amounting to an impasse. Yet those substantial indications of possible Sixth Amendment difficulties were not explored. They should be and for that purpose we remand so that the district court may do so. Cf. United States v. Young, 644 F.2d 1008, 1013-14 (4th Cir.1981).
 
 
 49
 VACATED AND REMANDED.
 
 
 
 [1]
 It must be noted that, although no prejudice needs to be shown with respect to the fairness of the trial or its outcome, a defendant must, however, make a showing that the conflict of interest in some way "adversely affected his lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 350 (1980)
 
 
 [2]
 Yet, some proof of ineffectiveness on the part of Lowman is evident from the record. For example, the record reveals a failure to make timely summons of witnesses and other indicia of lackadaisical performance due in the main to uncertainly until less than ten days prior to trial over whether he would be representing Boysaw at trial, and the personal antagonism which persisted throughout the trial